[No. 2332-2.   Division Two.   July 20, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM E. COSDEN, JR., *Appellant.*

*Don W. Taylor* and *Clifford Stilz* (of *Fristoe, Taylor & Schultz*), for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *George Darkenwald, Deputy,* for respondent.

PEARSON, J.—Defendant William Cosden, Jr., appeals from a conviction of first–degree rape under RCW 9.79.170, the relatively new rape statute. The principal issue on appeal is whether prejudicial error occurred when the trial court excluded evidence offered by the defendant that the complaining witness had engaged in sexual intercourse with another man approximately 4 days prior to the alleged rape. We hold the exclusion was not reversible error under the facts and circumstances of this case.

The facts concerning the alleged rape are as follows. Defendant and the complaining witness encountered one another at the Rest Over truck stop in rural Thurston County in the early morning hours of November 30, 1975. They had not previously met. The witness was en route to her rural home, driving her parents' four–wheel–drive Dodge pickup truck, and had stopped for gas at the station. There was heavy ice and snow on the roads which made driving extremely difficult. Defendant, an employee of the station, was engaged that evening in rendering assistance to vehicles which had difficulty because of adverse road conditions.

At the station, defendant, who lived in the vicinity of the witness, offered to follow her home in his 1961 one–ton Dodge truck in the event she had difficulty driving. She declined the offer. He testified she accepted the offer. Defendant did follow her as she left the station.

After leaving the truck stop, the witness drove east on Lathrop Road approximately a mile and a half to the intersection of Case Road, where her vehicle began to slide into the ditch. She got out to put it into four–wheel drive, and was surprised to see defendant come up behind her in his truck. He again offered assistance. She claimed the offer was refused. He claimed he assisted in placing her vehicle in four–wheel drive.

Testimony of the two parties was in sharp dispute as to events after leaving the intersection of Lathrop and Case Roads. Both vehicles proceeded south on Case Road. Defendant testified that the complaining witness stopped her vehicle in the middle of the intersection of Case Road and 101st Street, for no apparent reason. Defendant stopped behind her. She got out of her vehicle, slipped and fell on the ice, and then walked back to defendant's vehicle and told defendant she wanted to talk with him. She got into his truck and asked him if they could go some place where they could be alone. He then told of driving to an isolated place, where her attempts to seduce him were unsuccessful because he became psychologically impotent.

On the other hand, the victim's version told of violence culminating in rape. She testified that she saw the lights of his truck following her as they left the Lathrop–Case Road intersection to proceed south on Case Road. Approximately 1 mile south, she noticed in the rear–view mirror that defendant's truck was no longer following her. It appeared to have gone into a ditch. She backed up her vehicle to the 101st Street intersection, and left it in the middle of the intersection with the lights on and the motor running. She walked back to the truck to see if defendant needed help. Defendant asked her to drive the truck while he pushed it out of the ditch. The truck came out of the ditch without

difficulty. As she started back to her vehicle, she was struck on the back of the neck and knocked to the ground. Defendant was standing over her, menacing her with a heavy rubber mallet. She was then forced into the truck, driven to an isolated place, ordered to take off all her clothes, and was raped twice during the next half hour. At one point she was choked. After making some threats, defendant finally drove her back to her vehicle. The engine was still running. She drove home, took a bath, slept for a time, and then reported the incident to the sheriff's office at about 4 a.m.

Much of the physical and scientific evidence supported the complaining witness' version of the incident. There were bruises and contusions on her body consistent with her version of violence. Sperm and hair were found on defendant's coveralls, and the hair was microscopically alike in all particulars to that of the victim. Sperm was also found on the victim's panties and panty hose. A pathologist from the hospital where the victim was examined testified that specimens taken from the victim's vagina on the morning of November 30, 1975, and preserved on slides showed evidence of sperm. This witness concluded that intercourse had taken place within 12 hours prior to obtaining the specimens. All of this evidence tended to dispute defendant's claim that no intercourse had occurred.

Furthermore, other witnesses observed the victim's car at the intersection of Case Road and 101st Street, with lights on and engine running. The victim also led officers to the scene of the alleged rape where they found certain items which she had thrown from the window of defendant's truck during the incident.

On the other hand, defendant's expert medical witness, Dr. Gale Wilson, who viewed the same slides on which the State's expert opinion was based, testified that the slides contained only "very, very occasional sperm." This indicated to him that intercourse must have taken place more

than 12 hours prior to taking the smears. The doctor further testified that sperm may remain in the vagina for several days after intercourse. On cross–examination, Dr. Wilson conceded the minute number of sperm could have been consistent with a more recent sexual contact if a douche or thorough washing had taken place prior to obtaining the smears.

To corroborate Dr. Wilson's testimony, and to explain away the presence of sperm found in the victim, defendant offered at a pretrial hearing to prove through the victim's own testimony that she had engaged in sexual intercourse with another man on November 26, 1975, some 4 days prior to the alleged rape. Defendant claims this offered evidence was directly relevant to the material issue of whether or not defendant had engaged in intercourse with the victim. The trial court ruled the evidence inadmissible, concluding that RCW 9.79.150[1] allowed the evidence under limited circumstances only when relevant to the issue of consent. It is our view that the reasons given by the trial court for rejecting the evidence are erroneous, but refusal to allow the evidence was not an abuse of discretion under the facts and circumstances of this case.

---

[1]RCW 9.79.150 provides in part:

"(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

"(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

" . . .

"(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the

The trial court assumed, incorrectly we think, that evidence of prior sexual behavior of a prosecuting witness in a rape case may be allowed under RCW 9.79.150 only on the issue of consent, and within the guidelines prescribed in subsection (d). The statute deals specifically with admissibility of prior sexual behavior of a rape victim on the issue of consent, allowing the evidence under narrowly defined circumstances within the discretion of the trial judge. Such prior sexual behavior is rendered inadmissible under all circumstances to attack credibility of the victim. To this extent the statute was both a codification and a clarification of the prior case law which had considered the relevancy of this type of evidence to both credibility and consent. *State v. Geer,* 13 Wn. App. 71, 533 P.2d 389 (1975); *State v. Allen,* 66 Wn.2d 641, 404 P.2d 18 (1965). The purpose of the statute, like the rationale of the prior cases dealing with this subject, is to encourage rape victims to prosecute and eliminate prejudicial evidence which often has little, if any, relevance on the issues for which it is usually offered, namely, credibility or consent. *State v. Geer, supra.*

██ But neither the prior case law nor the statute purports to establish a blanket exclusion where the purpose of the evidence is highly relevant to other issues which may arise in prosecutions of rape. *See State v. Simmons,* 59 Wn.2d 381, 368 P.2d 378 (1962); *State v. Geer, supra.* The case at bench affords an example.

Where the defendant denies any sexual contact with the victim, yet the post–rape medical tests show evidence of a recent sexual contact, then all recent sexual contacts which could account for those testing results become highly relevant on the issue of defendant's responsibility for the crime. And it would be unfair to deprive defendant of the

victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court."

right to show the test results are not necessarily inconsistent with his denial of sexual intercourse with the victim.

Normally, evidence of a single act of sexual intercourse by the victim of rape within a short period of time prior to the alleged crime will not be so highly prejudicial or inflammatory as to outweigh its probative value, where expert evidence establishes that such a contact could from a reasonable medical probability account for the sperm shown by the post–rape testing procedure.

Whether the evidence should be allowed on this issue requires the exercise of discretion by the trial court based upon the balancing process of the sort described in RCW 9.79.150(3)(d), namely, whether its probative value is substantially outweighed by the danger of undue prejudice. Necessarily, the offer of proof must be specific and a proper medical foundation must be made in the offer of proof to establish the probative value of the testimony.

In the case at bar, the offer of proof stated only: "I offer to prove that if permitted to examine the complaining witness [name omitted] would state that on November 26, 1975, she had sexual intercourse with a friend which relationship was successfully completed."

Dr. Wilson's evidence was not included in the offer of proof, nor was his testimony sufficiently specific at trial to establish the necessary foundation. Dr. Wilson was not asked by hypothetical question or otherwise whether a 4–day–old contact would in terms of reasonable medical probability account for the presence of the quantity of sperm shown on the slides.[2] Furthermore, Dr. Wilson's testimony that a douche or thorough washing could account for the "very, very occasional sperm," coupled with the victim's testimony of taking a bath prior to the hospital tests, greatly weaken the probative value of the offered testimony. Also, the offered evidence, while it might tend to explain away the sperm taken as a result of the pelvic

---

[2]We note there was no attempt to voir dire Dr. Wilson out of the presence of the jury, to lay a proper foundation for his opinion.

examination, would not explain away the presence of sperm on defendant's overalls, nor on the victim's panties and panty hose. In short, the probative value of the evidence was weak and nonpersuasive in light of all the other facts and circumstances of this case, and the foundation evidence insufficient. Accordingly, we hold there was no abuse of discretion in refusing to allow the evidence. We note also that defendant was not precluded from contending that Dr. Wilson's opinion evidence corroborated his defense.

Defendant raises two other assignments of error which we now consider. After defendant's arrest, he was given the *Miranda* warnings. Nevertheless, he commented to the police that he had not been with any women on the night in question and then exercised his right to remain silent. At trial the deputy prosecutor cross–examined defendant regarding his exercise of his right to remain silent, examined a deputy sheriff concerning defendant's silence, and commented on the subject of defendant's silence in closing argument. Defendant contends this use of defendant's post–arrest silence violated the due process clause of the Fourteenth Amendment. *State v. Upton,* 16 Wn. App. 195, 556 P.2d 239 (1976).

It is true that *State v. Upton, supra,* and *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240 (1976), hold that the unequivocal post–arrest assertion of the Fifth Amendment right to remain silent may not be used to impeach the defendant's testimony at trial. The rationale of the ruling is that the unequivocal post–arrest assertion of the right is "insolubly ambiguous," and does not necessarily tend to show a fabricated defense. *Doyle v. Ohio, supra.*

But in the case at bench there was not an unequivocal post–arrest assertion of the right to remain silent after the *Miranda* warnings were given. Here defendant volunteered a defense to the police wholly inconsistent with the one interposed at trial, namely, that he had not been with a woman on the night in question. Hence, the fact of his failure to relate the defense of seduction and psychological impotence to the police is not insolubly ambiguous where

he later asserts that defense at trial. Under those circumstances his partial silence strongly suggests a fabricated defense and the silence properly impeaches the later defense. *See Doyle v. Ohio, supra.*

Finally, defendant urges as error the reasonable doubt instruction given by the court, as well as the refusal of the trial court to give one of those proposed by defendant. We find no error. A reasonable doubt instruction identical to the one given by the trial court was upheld in *State v. Thompson*, 13 Wn. App. 1, 533 P.2d 395 (1975).

Affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied August 26, 1977.

Review denied by Supreme Court February 17, 1978.