[No. 7347–1–II.  Division Two.  May 16, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD ARTHUR SEELEY, *Appellant*.

*James J. Sowder*, for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney*, and *Darvin J. Zimmerman, Deputy*, for respondent.

PETRICH, J.—Ronald Seeley appeals his conviction for indecent liberties. The issue we are asked to decide is

whether defendant's response to custodial questioning following advisement of rights which is consistent with the defendant's claim of innocence in his testimony at trial may be used in rebuttal by the State when the inferences drawn from the explanation given during the earlier custodial questioning conflict with those drawn from the defendant's explanation at trial. We conclude that when the inferences drawn from the two explanations conflict significantly, the State is permitted to exploit those differences by rebuttal evidence and closing argument. Such exploitation does not amount to a denial of defendant's right to due process by improperly intruding on his right to remain silent during custodial interrogation after advisement of rights since the defendant did not remain silent with respect to those conflicting explanations.

Laura (11) and Susan (9) Peterson[1] spent Saturday night, May 7, 1983, across the street at the home of their friends Charee and Andrea Seeley, stepdaughters of Ron Seeley. Susan and Andrea went to bed about 10 p.m. Susan slept in a sleeping bag next to Andrea's bed. Laura and Charee watched a movie on TV with Mr. and Mrs. Seeley. Laura testified that Seeley got a telephone call and left the house, saying he would be back about 3 a.m. Laura and Charee went to bed in Charee's room, which was next to the room Susan occupied; neither heard anything unusual during the night.

Susan testified that at about 3 a.m. when she was half asleep, Seeley, wearing a maroon robe, came into the room she shared with Andrea. Susan then described a series of offensive acts performed by Seeley, the nature and details of which are unnecessary to this opinion. It suffices to say that such conduct clearly supports a finding of guilt to the crime of indecent liberties. After he left, she packed her bag but did not leave "because the doors were locked and I didn't know what anybody would do if I would leave." She

---

[1]Fictitious first names and surname have been assigned to the victim and members of her family.

eventually fell back to sleep.

Susan went home at 6 a.m. Later that morning, she related the incident to her mother, who called Children's Protective Services. Seeley called Mrs. Peterson that morning after he heard that Susan was not feeling well. He told her that Andrea gets sick whenever she sleeps in that sleeping bag. Andrea denied on the stand that she had become sick after sleeping in the sleeping bag. The following Monday, May 9, Deputy McVicker talked with Seeley and searched the bedroom but did not find semen traces.

Seeley testified at trial that during that Saturday evening he had told Susan not to jump on the furniture and that she must sleep in a sleeping bag next to Andrea's bed rather than in the bed. He testified that Saturday evening Susan had walked in while he was shaking his penis after going to the bathroom; he admitted that he had told this to McVicker on May 9. He, his wife, his wife's father, and Charee testified that Seeley did not own a maroon robe but had a brown one.

On rebuttal, Deputy McVicker testified that neither Mr. nor Mrs. Seeley told him on May 9 that Susan was upset because he had told her not to jump on the furniture or that she had to sleep on the floor. In his closing argument, the prosecutor stated as follows:

> Deputy McVicker was recalled as a rebuttal witness. You will recall again that he testified that this new explanation basically given in court that it's because [Susan] was upset about either jumping on the furniture or upset about having to sleep on the floor was why she was making the story up. Certainly all those facts were in their minds when they were talked to by Deputy McVicker the day after the incident if there was really any substance to that argument whatsoever, but there's no question they would have told Deputy McVicker about it.

Seeley was convicted of indecent liberties and was sentenced to 10 years. His motion for a new trial was denied after the State had stipulated that Seeley was informed of his *Miranda* rights before his discussion with McVicker.

Seeley contends that the prosecutor impermissibly commented on his right to remain silent when he argued to the jury that Seeley had not mentioned to McVicker that Susan was upset about either jumping on the furniture or having to sleep on the floor.

A prosecutor may not cross–examine a defendant about his failure to tell his story to officers after he had been given *Miranda* warnings when the defendant asserts exculpatory facts at trial. *Doyle v. Ohio,* 426 U.S. 610, 611, 49 L. Ed. 2d 91, 94, 96 S. Ct. 2240 (1976). The *Doyle* rule prohibits such comments because the defendant's silence is "insolubly ambiguous," and because the *Miranda* warnings carry an implicit assurance that there be no penalty for exercising those rights. *Doyle v. Ohio,* 426 U.S. at 617–18. The principle applies to argument as well as to cross examination. *State v. Fricks,* 91 Wn.2d 391, 396, 588 P.2d 1328 (1979).

When a defendant makes statements after being given *Miranda* warnings that are inconsistent with statements he makes at trial, the prosecution may inquire into the prior inconsistent statements. *Anderson v. Charles,* 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180 (1980); *State v. Cosden,* 18 Wn. App. 213, 568 P.2d 802 (1977), *cert. denied,* 439 U.S. 823, 58 L. Ed. 2d 115, 99 S. Ct. 90 (1978). Such questioning does not unfairly use a defendant's silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. "As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles,* 447 U.S. at 408.

Seeley concedes that he received *Miranda* warnings and voluntarily talked with McVicker. He argues, however, that he said nothing to McVicker that could be construed as inconsistent with his defense at trial. He simply failed to or chose not to give a full explanation of the event to McVicker after he had been informed of his *Miranda* rights. Unlike the defendant in *Anderson v. Charles,* he consistently maintained his innocence both during the cus-

todial interrogation and at trial. He attempts to distinguish his case from *State v. Cosden, supra,* where this court concluded that the comment on post–*Miranda* silence was permissible because defendant's statements to the sheriff had related to a defense "wholly inconsistent with the one interposed at trial". *State v. Cosden,* 18 Wn. App. at 220.

Although Seeley maintained a defense based on denial, the version of the events that he gave at trial was not merely an addition to a general or noncommittal comment as was the case in *Doyle v. Ohio, supra.* The inferences from the facts given at trial and those told to McVicker are different. In *United States v. Leonardi,* 623 F.2d 746, 756–57 (2d Cir. 1980), the court stated as follows:

> Under certain circumstances prior silence concerning critical facts might be deemed inconsistent with later testimony which includes their purported recollection. However, for this to be the case, the failure to mention those matters must conflict with that which is later recalled. Where the belatedly recollected facts merely augment that which was originally described, the prior silence is often simply too ambiguous to have any probative force . . . and accordingly is not sufficiently inconsistent to be admitted for purposes of impeachment.

The inference here from the bathroom incident as told to McVicker was that Susan was confused. The inference from the jumping on furniture and sleeping bag episodes was that Susan was angry with Seeley and retaliated by making up the story. While Seeley's defense of denial remained consistent, the facts relevant to the complaining witness' motivation and credibility are inconsistent. The complaining witness' motivation and credibility are significant if not crucial issues to the State's case. Seeley's testimony at trial was more than an addition to a general or noncommittal prior custodial statement. He testified to a version of events at trial that differed from the explanation he had given during custodial interrogation. It was not improper for the prosecutor to present evidence of this inconsistency or comment on it in closing argument.

Judgment is affirmed.

REED, A.C.J., and ALEXANDER, J., concur.

Reconsideration denied July 8, 1986.

Review denied by Supreme Court October 7, 1986.