[No. 22845–5–I.   Division One.   July 9, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. SARI HELLER, *Appellant.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neill–Stephens, Deputy,* for respondent.

SWANSON, J.—The defendant, Sari Heller, appeals her conviction for robbery in the first degree while armed with a deadly weapon. She argues that the prosecutor's cross examination of her at trial violated her rights to counsel, to due process, and to remain silent. We reverse and remand for new trial.

By information filed December 22, 1987, Sari Heller was charged with robbery in the first degree while armed with a deadly weapon. Following trial to a jury, Heller was found guilty as charged.

At trial, the victim, Dale Hassett, testified that he became acquainted with Heller because they both lived in the Pioneer Square Hotel and they both attended the Metropolitan Business College. According to Hassett, Heller had borrowed money from him on several occasions in

amounts of $1 to $5. Heller would also ask Hassett for cigarettes.

Hassett testified that on the night of December 16, 1987, he arrived home from work between 11 p.m. and midnight. He was in bed watching television when Heller came to his door and asked for a cigarette. Hassett gave her a cigarette and she stood in his doorway smoking it and talking to him. According to Hassett, Heller suddenly said, "I'm going to kill you, you b–s–t", and Hassett saw the glint of a knife out of the corner of his eye. Hassett testified that he tried to grab Heller's wrists and a struggle ensued, during which he tripped and fell against a wall in a prone position. At that point, Heller plunged the knife into Hassett's throat and fled. Before he left with the medics, Hassett noticed that his pants, which contained his wallet, were missing. Subsequently, the pants and wallet were found in one of the hotel bathrooms with the money still in the wallet.

Heller, however, testified that she had agreed to have sex with Hassett in exchange for $20 and had gone to his room for that purpose. Heller said that she took a knife along for protection. According to Heller, she told Hassett she wanted the money before sex, but Hassett started grabbing her. Heller testified that she then pulled out her knife and, when Hassett saw it, he started kicking her. Heller then stabbed Hassett, grabbed his pants, and threw them in the bathroom. Heller did not know why she took the pants, but stated she was scared and confused when she took them.

At trial, the State established that the police came to the hotel, located Heller, read *Miranda* warnings to her, and placed her under arrest. When the police were talking to Heller about the crime, she told them "I don't know what you're talking about." The next morning a detective spoke with Heller after advising her of her rights. The detective asked Heller whether she wanted to talk about the incident, and Heller replied that she didn't have anything to talk about, and didn't know anything that happened.

On cross examination, the prosecutor asked Heller a series of questions about whether she ever told any police

officer or prosecutor that Hassett tried to rape her, and that she only stabbed him in self–defense, to which she answered "No, I didn't." Defense counsel objected to the initial question on this topic, arguing that the prosecutor was improperly commenting on Heller's right to remain silent. The prosecutor told the court that the parties had stipulated "that any statements made to the police were voluntary." Defense counsel acknowledged the stipulation, but stated that "regarding statements made directly at the time or not made at the time, it is improper for the State to comment on that." The court without ruling on the objection instructed the prosecutor to "ask another question". The prosecutor continued, without further objection, to question Heller about the fact that she didn't tell the police or prosecutors that Hassett tried to rape her.

Following her conviction, Heller timely appealed to this court.

The primary issue on appeal is whether Heller was denied her rights to remain silent and to due process by the State's cross examination of her regarding her failure to inform the police and the prosecutor of her version of the incident prior to trial. Heller contends that the State's cross examination was an improper comment on post–*Miranda* silence and that such error was not harmless.[1] We agree.

While it is well settled that the State may not use post-arrest silence following *Miranda*[2] warnings to impeach a defendant's testimony at trial, once a defendant waives the right to remain silent and makes a statement to police, the prosecution may use such a statement to impeach the defendant's inconsistent trial testimony. *State v. Belgarde,*

---

[1]While defense counsel at trial failed to properly renew his objection and preserve the record on this issue, we will review this issue because it presents a claimed manifest error affecting a constitutional right. *State v. Scott,* 110 Wn.2d 682, 757 P.2d 492 (1988); *State v. Gutierrez,* 50 Wn. App. 583, 588 n.1, 749 P.2d 213, *review denied,* 110 Wn.2d 1032 (1988).

[2]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

110 Wn.2d 504, 511, 755 P.2d 174 (1988) (citing *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976)); *see also State v. Gutierrez,* 50 Wn. App. 583, 589, 749 P.2d 213, *review denied,* 110 Wn.2d 1032 (1988); *State v. Seeley,* 43 Wn. App. 711, 714, 719 P.2d 168, *review denied,* 107 Wn.2d 1005 (1986).

> In particular, the State may question a defendant's failure to incorporate the events related at trial into the statement given police or it may challenge inconsistent assertions. Such was the situation in [*State v. Cosden,* 18 Wn. App. 213, 568 P.2d 802 (1977), *review denied,* 89 Wn.2d 1016, *cert. denied,* 439 U.S. 823 (1978)] where the defendant had not remained silent, but had uttered a denial in one form and on trial asserted a different excuse. This "partial silence" at the time of the initial statement is not insolubly ambiguous, but "strongly suggests a fabricated defense and the silence properly impeaches the later defense." *Cosden,* at 221. Such questioning does not violate due process as the defendant has waived the right to remain silent concerning the subject matter of his statement.

*Belgarde,* 110 Wn.2d at 511–12.[3]

█ Here, Heller told the arresting officers and investigating detective that she didn't know what they were talking about when they asked her about stabbing Hassett. This statement is not insolubly ambiguous. It is inconsistent with Heller's trial testimony which related a story explaining her presence in Hassett's room and why she stabbed Hassett. Therefore, the State was entitled to cross–examine Heller regarding her inconsistent prior statements and "raise unfavorable inferences from the defendant's failure to tell police at the time of [her] arrest crucial exculpatory information [she] later relates at trial." *Gutierrez,* 50 Wn. App. at 589.

Heller, however, challenges the prosecutor's cross examination regarding whether she or her attorney ever went to the police or prosecutor after the original interrogations to

---

[3]In *State v. Cosden,* 18 Wn. App. 213, 568 P.2d 802 (1977), *review denied,* 89 Wn.2d 1016, *cert. denied,* 439 U.S. 823 (1978), the defendant, who was eventually convicted of rape, was arrested and given his *Miranda* warnings. He told police he had not been with any women that night and then invoked his right to remain silent. At trial, however, the defendant related a defense of "seduction and psychological impotence". *Cosden,* 18 Wn. App. at 220.

tell them her story. Heller claims that this questioning violated her right to counsel and her Fifth Amendment privilege against self–incrimination because it wrongly suggested to the jury that she or her attorney had an affirmative obligation to come forward with an explanation. In *State v. Apostle,* 8 Conn. App. 216, 512 A.2d 947 (1986), a case substantially analogous, the issue presented here was discussed. The issue addressed by *Apostle* was

> whether, after the warnings of *Miranda* are given and the defendant chooses to answer questions posed by the police, the defendant has an affirmative obligation when his interrogation has ceased, to return to the police to correct a false statement made during that interrogation about the facts or circumstances of the crime.

*Apostle,* at 221. In *Apostle,* the defendant gave a written statement to police after being arrested and given his *Miranda* warnings. On direct examination at trial, the defendant admitted that material portions of the statement were false. On cross examination, over objection by defense counsel, the prosecutor asked the defendant why he had not later returned to the police station to correct the statement. During final argument, the prosecutor claimed that the defendant could and should have corrected his statement. *Apostle,* at 220. The *Apostle* court observed that the precise issue of the case had not been addressed in any reported case, either federal or state. *Apostle,* at 221. After reviewing federal and state decisions involving the waiver of the right to "post–arrest silence", the court concluded that

> a waiver of the right to "post–arrest silence" relates to statements made by a defendant about the crime in response to governmental inquiry. Without such inquiry, we conclude that the defendant cannot waive his right to silence, after he has been given *Miranda* warnings.

*Apostle,* at 224. In reaching this conclusion, the court noted that

> [a] defendant may reassert his right to remain silent at any time, and if he ceases to answer questions, or to come forward with additional or correcting information after questions are no longer being asked of him, there is a reasonable possibility that he is relying upon that right.

*Apostle* at 224 (citing Note, *Protecting Doyle Rights After Anderson v. Charles: The Problem of Partial Silence,* 69 Va. L. Rev. 155, 166 (1983)). The court held that the prosecutor's cross examination, in combination with the comments made during final argument, was impermissible because it suggested to the jury that the defendant's silence during his freedom from custodial interrogation would be interpreted as implying guilt or as a comment on his Fifth Amendment right to remain silent. Further, the court concluded that because the defendant's exculpatory story was not "transparently frivolous" and the evidence of guilt was not otherwise overwhelming, the prosecutor's questioning and comments constituted reversible error.

The present case is similar to *Apostle* in that each involves a defendant who, following arrest and being given *Miranda* warnings, made statements to the police which were inconsistent with their exculpatory stories related at trial. Further, each was asked on cross examination by the prosecutor why they had not corrected the statement later. The case at bar differs from *Apostle* because here the prosecutor's final argument did not comment on Heller's failure to correct her story. However, the prosecutor here appears to have gone further in cross–examining the defendant regarding her failure to later correct the original story than the prosecutor did in *Apostle.* Here, the prosecutor did not merely ask the defendant (Heller) why she had not returned to the police station to correct her story, but questioned Heller extensively and at length regarding her failure to come to the fifth floor of the courthouse and talk to the prosecutor to correct her story, her failure to go back to the police to correct her story, and her failure to have her lawyer go to the police to correct her story.[4] Under *Apostle,* such extensive questioning was impermissible because it suggests

---

[4]The cross examination of Heller directed to her failure to go to the police or to the prosecutor to correct her story covers six full pages of the record.

to the jury that [her] silence during [her] freedom from custodial interrogation could be interpreted as implying guilt or as a comment on [her] fifth amendment right to remain silent.

*Apostle,* at 226–27.

We find the reasoning in *Apostle* persuasive. The questioning here was impermissible.

■ The next question is whether this impermissible line of questioning constitutes harmless error. When reviewing a constitutional error to determine if it is harmless, the court looks only at the untainted evidence to determine if that evidence is so overwhelming it "necessarily leads to a finding of guilt". *State v. Gutierrez,* 50 Wn. App. 583, 590, 749 P.2d 213 (quoting *State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986)), *review denied,* 110 Wn.2d 1032 (1988). In determining whether the untainted evidence is overwhelming, the court looks to whether the defendant's credibility was at issue because he testified on his own behalf regarding disputed matters, and to whether the defendant's exculpating story was plausible. *Gutierrez,* 50 Wn. App. at 590–91.

In *Guiterrez,* the State improperly referred to the defendant's postarrest assertion of his right to remain silent. In determining whether the error was harmless, the court observed that the defendant's credibility was at issue because he testified on his own behalf concerning disputed facts and that the defendant's exculpating story was plausible. *Gutierrez,* 50 Wn. App. at 590. The court concluded that violation of the defendant's due process rights was not harmless and reversed, ordering a new trial. In reaching this conclusion, the *Gutierrez* court made the following observation:

> Because credibility determinations cannot be duplicated by a review of the written record, at least in cases where the defendant's exculpating story is not facially unbelievable, this court is not in a position to say, beyond a reasonable doubt, that any reasonable jury would have reached the same result, absent the prejudicial error committed.

*Gutierrez,* 50 Wn. App. at 591.

The constitutional error here is similar to that in *Gutierrez*. Here, Heller's credibility was at issue because she testified on her own behalf regarding disputed matters, *i.e.*, her version of the facts. Also, at oral argument before this court, the State admitted that it inquired regarding this line of questioning because Heller's credibility was an issue. Further, Heller's exculpating story was reasonably plausible and not facially unbelievable. Therefore, under *Gutierrez*, we cannot say that the error here was harmless.

We reverse and remand for a new trial.

COLEMAN, C.J., and FORREST, J., concur.