[No. 19607-1-III.   Division Three.   January 15, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. BOBBY RAY CURTIS, *Appellant*.

*Paul J. Wasson II*, for appellant.

8

*John D. Knodell, Prosecuting Attorney,* and *Edward A. Owens, Deputy,* for respondent.

SWEENEY, J. — The exercise of constitutionally guaranteed *Miranda*[1] rights must be without penalty. The State penalizes a defendant for asserting those rights when it introduces evidence of the defendant's exercise of *Miranda* rights as substantive evidence of guilt. In this case, the prosecutor invited an investigating officer to comment in front of a jury that the defendant chose to remain silent and consult a lawyer after being read his *Miranda* rights. The invitation was deliberate and implicates fundamental constitutional rights. We therefore reverse and remand for a new trial.

## FACTS

Bobby Ray Curtis was tried by jury for assault in the second or third degree, with a deadly weapon enhancement on both counts.

On the evening of June 11, 2000, Elizabeth LaFramboise called on her next-door neighbor, Adele Cariveau. Bobby Ray Curtis and his girl friend, Lisa Cariveau, were there. Ms. LaFramboise asked Mr. Curtis about money that he owed her husband, Nathan LaFramboise, for a tattoo. After she left, Nathan LaFramboise came over to demand payment. The door hit seven-months' pregnant Lisa in the stomach as Mr. LaFramboise barged in. Mr. Curtis refused to pay up. A brawl ensued, primarily between Mr. Curtis and Mr. LaFramboise, but also involving Lisa and Mr. LaFramboise's brother, Calvin Lynch. Mr. LaFramboise and Mr. Curtis fought to a standstill. Mr. LaFramboise

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ended up bleeding from a wound to the back of his left thigh.

Mr. Curtis and Lisa drove away from the scene and were later picked up by the Ephrata police.

Officer John Turley ordered Mr. Curtis out of the patrol car. Officer Turley read Mr. Curtis his *Miranda* rights. Mr. Curtis refused to answer any questions and asked for an attorney. This prompted the following exchange between the prosecutor and Officer Turley at the trial:

Q. Go ahead. And you had him—once he got out, then you—

A. I read him his *Miranda*, his constitutional rights.

Q. Was anything said at that time?

A. He refused to speak to me at the time, and wanted an attorney present.

Report of Proceedings (RP) at 34-35. Officer Turley also tried to interview Mr. Curtis later in the Grant County jail. Again at trial the prosecutor asked: "Was any information gathered at that time . . . by talking to Mr. Curtis?" RP at 61. Officer Turley answered that he was able to take some pictures of marks on Mr. Curtis's shirtless body and hands.

At trial witnesses disagreed about the details of the fight, specifically how Mr. LaFramboise's wound was caused, and whether Mr. Curtis had a knife. Much of the evidence was inadmissible hearsay. Officer Turley related, without defense objection, various damaging hearsay statements made to him at the scene.[2] When the defense tried to introduce its own inadmissible hearsay to counter the State's inadmissible hearsay, the prosecutor objected. The State then released the hearsay declarant from subpoena, leaving the defense with no way to answer the damaging hearsay statements. The court ultimately admitted the evidence by bending ER 613, which permits impeachment of a witness with extrinsic evidence of a prior inconsistent statement.

---

[2] RP at 35, 87-88 (Lisa Cariveau); RP at 55-56 (Calvin Lynch and Barbara LaFramboise (grandmother)); RP at 90-91 (Barbara LaFramboise); RP at 59, 65 (Mr. LaFramboise).

The defense proposed jury instructions on self-defense, defense of others, and necessity. The court refused these instructions. It ruled that they would be appropriate only if Mr. Curtis admitted he used a knife. The court characterized the defense as one of general denial and declined to give any self-defense instruction. Defense counsel concurred. But Mr. Curtis did not deny fighting Mr. LaFramboise. And in closing, the defense argued self-defense:

> [M]y client was faced with one person that was over six-two . . . and another, his brother, right along side them. There was information that came out that [the brother] came running out, taking off his jacket. . . . [H]e had two people in front of my client, Bobby, and a fight ensued.

RP at 327.

The jury found Mr. Curtis guilty of third degree assault with no weapon enhancement. Mr. Curtis was sentenced by a different judge to the middle of the standard range—45 days—and ordered to pay medical restitution and costs.

Mr. Curtis claims he was denied a fair trial because of the State's comments on his invocation of *Miranda* rights and his lawyer's chronic failure to recognize and object to inadmissible hearsay. He also challenges his sentencing by a judge other than the one who heard the case. He does not assign error to the jury instructions. Because the *Miranda* issue is dispositive, we do not reach the remaining issues.

## COMMENT ON POST-*MIRANDA* ASSERTION OF RIGHTS

### MANIFEST CONSTITUTIONAL ERROR

Mr. Curtis contends his Fifth Amendment rights to remain silent and to receive counsel and his due process guarantee under the Fourteenth Amendment were infringed when the State called the jury's attention to his exercise of these rights. He contends this constituted an impermissible penalty on the exercise of his *Miranda* rights. And, as such, it violated the implied assurance that

no negative consequences will attach to invoking these rights. Mr. Curtis contends the prosecutor deprived him of the presumption of innocence by deliberately soliciting evidence of his failure to waive his rights.

■■■ This is a claim of manifest constitutional error, which can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Neidigh*, 78 Wn. App. 71, 78, 895 P.2d 423 (1995). Review is de novo. *State v. Byers*, 88 Wn.2d 1, 11, 559 P.2d 1334 (1977) (Revelle, J. Pro Tem., concurring), *overruled on other grounds by State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984). Once it is established that the alleged error is both constitutional and manifest, we consider the merits. *State v. Jones*, 71 Wn. App. 798, 809-10, 863 P.2d 85 (1993); *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). The State has the burden of overcoming the presumption that a constitutional error is prejudicial. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996).

■■■ The right to be free from compelled self-incrimination is liberally construed. *Id.* at 236 (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)). The seriousness of introducing testimony that a defendant exercised his *Miranda* rights depends on whether the rights were asserted before or after arrest, and before or after the reading of *Miranda* rights. Merely mentioning a suspect's prearrest silence generally is not a violation. *State v. Lewis*, 130 Wn.2d 700, 706, 927 P.2d 235 (1996). And it may even be permissible to use a defendant's prearrest, pre-*Miranda* silence to impeach his exculpatory story if he testifies. *See, e.g., Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

Mr. Curtis's silence here was post-*Miranda*. The evidence was not offered for impeachment—Mr. Curtis did not testify. And the question was asked during the State's case in chief. *See Lewis*, 130 Wn.2d at 706 n.2.

POST-*MIRANDA* SILENCE

■■■ Once the suspect is arrested and *Miranda* rights are read, the State violates a defendant's Fifth and Fourteenth

Amendment rights by introducing evidence of his exercise of *Miranda* rights as substantive evidence of guilt. *Lewis*, 130 Wn.2d at 705; *Easter*, 130 Wn.2d at 236. The reason for this is that the government, in reading these rights, implicitly assures the accused that he may assert his rights without penalty. *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *Easter*, 130 Wn.2d at 238.

Here, Mr. Curtis responded to his arrest and the reading of his rights by immediately and unequivocally asserting his rights.

We compare the prosecutor's conduct here to that discussed in *Lewis* and *Easter*, the Washington cases most often cited on this issue. We note that both of those cases involve prearrest, pre-*Miranda* silence, and both are appeals of trial court mistrial motion rulings, which are reviewed for abuse of discretion. In *Lewis*, the burden was placed on the defendant to establish prejudice. 130 Wn.2d at 707. *Easter* applied the constitutional harmless error standard in which the State must prove lack of prejudice beyond a reasonable doubt. 130 Wn.2d at 242.

In *Lewis*, the trial court granted a defense motion in limine to exclude reference to rape suspect Lewis's having missed some appointments with police during the investigation. *Lewis*, 130 Wn.2d at 702. The State's police witness did not mention the missed appointments. But he did tell the jury that, when informed he was being investigated, Mr. Lewis had asserted his innocence and the officer had remarked that, "if he was innocent he should just come in and talk to me about it." *Id*. at 703. This was not responsive to the prosecutor's question. And the State did not mention this testimony in closing argument. *Id*. at 703-04. The trial court denied Mr. Lewis's motion for mistrial. The appellate court concluded that the mere unsolicited reference, with no suggestion it was proof of guilt, did not violate the Fifth Amendment. *Id*. at 706. The conviction was affirmed. *Id*. at 707.

*Easter* was a prosecution for vehicular assault. Before his arrest, Mr. Easter declined to answer questions. The court

ordered the State not to ask any questions about Mr. Easter's alleged evasiveness. Nevertheless, the arresting officer was permitted to testify about Mr. Easter's prearrest silence in the State's case in chief. *Easter*, 130 Wn.2d at 231-33. In closing argument, the prosecutor repeatedly characterized Mr. Easter's conduct as that of a "smart drunk" and made it the central theme of the State's case. *Id.* at 234. This was reversible error. *Id.* at 243.

▇ Here, the prosecutor's conduct falls somewhere between that of *Easter* and *Lewis*. The State did not harp on Mr. Curtis's exercise of his *Miranda* rights. But neither was this a case where the witness just blurted out a reference to Mr. Curtis's silence in response to a question intended to elicit something else. Rather, the prosecutor asked Officer Turley directly whether Mr. Curtis said anything in response to receiving his *Miranda* rights. Also, Mr. Curtis did not assert his rights ambiguously by failing to return prearrest phone calls or to show up for prearrest appointments with investigating officers. In direct and immediate response to the reading of his rights on arrest, he baldly asserted the right not to answer questions and to have a lawyer.

Either eliciting testimony or commenting in closing argument about the arrestee's exercise of his *Miranda* rights circumvents the Fifth Amendment right to silence as effectively as questioning the defendant himself. *Easter*, 130 Wn.2d at 236. The prosecutor did not directly refer to Mr. Curtis's post-*Miranda* refusal to speak without an attorney present in his closing argument. But he did invite the jury to infer that Mr. Curtis must have known he had done something wrong, because he took backroads in fleeing the scene. The jury's knowledge that Mr. Curtis refused to tell his side of the story without an attorney present may well have added weight to that inference.

In *State v. Nemitz*, this court held that the Fifth Amendment was violated when the prosecutor gratuitously elicited the fact that the defendant carried his lawyer's card, on the back of which were his rights if stopped on suspicion of

drunk driving. *State v. Nemitz*, 105 Wn. App. 205, 19 P.3d 480 (2001). The court concluded that the only plausible reason to mention the card was to raise the impermissible inference that it was more consistent with guilt than with innocence.

Here, the State's inquiries might have had some valid purpose if Mr. Curtis had made some sort of admissible statement after hearing his rights. The prosecutor knew, however, that the question would elicit only the facts that Mr. Curtis chose to remain silent and that he asked to talk to a lawyer. As in *Nemitz*, the question and answer were injected into the trial for no discernible purpose other than to inform the jury that the defendant refused to talk to the police without a lawyer. This was a violation of his rights under the Fifth and Fourteenth Amendments.

In the Ninth Circuit case of *Douglas v. Cupp*,[3] the prosecutor elicited the following from a police witness:

"Q.  Who arrested Mr. Douglas?

"A.  I did.

"Q.  Did he make any statements to you?

"A.  No.

"Prosecutor: That's all the questions I have."

The court held that this was just the sort of inquiry forbidden by the Supreme Court in *Miranda* and *Doyle*. Even without an explicit reference to *Miranda*, the prosecutor had purposefully elicited the fact of silence in the face of arrest. This in itself was an impermissible penalty on the exercise of the right to remain silent, from which a juror might have inferred that the defendant was guilty and his defense fabricated. The court reversed, because it could not say as a matter of law that the question was harmless beyond a reasonable doubt. *Douglas*, 578 F.2d at 267.

Our facts are more egregious than those of *Douglas*. Officer Turley specifically mentioned that Mr. Curtis's si-

---

[3] 578 F.2d 266, 267 (9th Cir. 1978) (quoting Trial Tr. at 158-59).

lence was in response to being informed of his *Miranda* rights.

HARMLESS ERROR

Constitutional error is presumed to be prejudicial, and the State bears the burden of proving the error harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). Here, the State attempts to shift the burden onto Mr. Curtis to prove prejudice.

■ To overcome the presumption of prejudice, the State must persuade this court that the untainted evidence overwhelmingly supports a guilty verdict. *Id*. at 426; *Easter*, 130 Wn.2d at 242; *State v. Heller*, 58 Wn. App. 414, 421, 793 P.2d 461 (1990). Otherwise, what may or may not have influenced the jury remains a mystery beyond the capacity of three appellate judges. *See State v. Barker*, 103 Wn. App. 893, 904, 14 P.3d 863 (2000) (recognizing that jury's mental processes inhere in its verdict and therefore are not subject to impeachment because they are not subject to understanding), *review denied*, 143 Wn.2d 1021 (2001).

That aside, eliciting such testimony puts the defense in a difficult position. Counsel must gamble on whether to object and ask for a curative instruction—a course of action which frequently does more harm than good—or to leave the comment alone. *State v. Perrett*, 86 Wn. App. 312, 322, 936 P.2d 426 (1997). Other courts, including the Ninth Circuit, have expressed doubt about the effectiveness of curative instructions. *See, e.g.*, *United States v. Prescott*, 581 F.2d 1343, 1352 (9th Cir. 1978) (by itself, even a prompt and forceful instruction is insufficient to vitiate the use of postarrest silence). And, of course, injecting evidence of postarrest silence may also impermissibly pressure the defendant to testify and explain that silence. This is a further erosion of his right to remain silent. *Lewis*, 130 Wn.2d at 706 n.2. The likely curative value of an instruction must be weighed against the possibility of additional damage by further impressing upon the jury's attention the defendant's decision not to talk without a lawyer. *Stewart v.*

*United States*, 366 U.S. 1, 10, 81 S. Ct. 941, 6 L. Ed. 2d 84 (1961).

The error was not harmless. Mr. Curtis must have a new trial. *Easter*, 130 Wn.2d at 242-43.

We reverse and remand for a new trial.

BROWN, A.C.J., and KATO, J., concur.

Reconsideration denied February 15, 2002.