115 P.3d 1004 (2005)
STATE of Washington, Respondent,
v.
Jayson Porter SHEETS, Appellant.
No. 22926-2-III.
The Court of Appeals of Washington, Division Three, Panel Five.
June 21, 2005.
*1005 James E. Egan, Attorney at Law, Kennewick, WA, for Appellant.
Andrew K. Miller, Scott W. Johnson, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
KURTZ, J.
¶ 1 When a mistrial is granted without the defendant's consent and after jeopardy has attached, a retrial is barred by double jeopardy principles unless the mistrial was justified by a "manifest necessity." State v. Graham, 91 Wash.App. 663, 667, 960 P.2d 457 (1998) (quoting State v. Eldridge, 17 Wash.App. 270, 276, 562 P.2d 276 (1977)). Jayson P. Sheets was charged with attempted second degree rape. During the trial, a State's witness testified that the victim appeared intoxicated and he further testified that he based this opinion upon his perception that the victim had been flirting with him. Arguing that the testimony violated RCW 9A.44.020, the rape shield statute, the State successfully requested that the court declare a mistrial. We hold a mistrial over Mr. Sheets's objection was improper because there was not a manifest necessity for the mistrial. Because a retrial is barred by double jeopardy principles, we reverse and remand to the trial court for the entry of an order of dismissal with prejudice.

FACTS
¶ 2 After celebrating a birthday at a local restaurant and bar, T.M. and her friends returned to Ryan Young's and Jared Campbell's apartment. While there, T.M. became sleepy and asked to sleep in Mr. Young's bed. Mr. Young agreed to give his bed to T.M. for the night.
¶ 3 Sometime after T.M. went to sleep, Mr. Young met Mr. Sheets at a nearby convenience store. The two bought beer and returned to Mr. Young's apartment. They drank the beer and then Mr. Young went to sleep on the couch. Mr. Young thought Mr. Sheets was either going to take a cab home or sleep at the apartment, something he had done numerous times before.
¶ 4 Early the next morning, T.M. awoke and discovered Mr. Sheets on top of her. Both were naked from the waist down. T.M. exited the bedroom and told the other individuals at the apartment what happened. When Mr. Campbell confronted Mr. Sheets, he denied forcing himself on T.M. Mr. Sheets was charged with attempted second degree rape.
¶ 5 During opening statements at trial, counsel for Mr. Sheets mentioned T.M. flirting with Mr. Young on the night in question. A side bar was held. The court then instructed the jury to disregard this statement.
¶ 6 The State called Mr. Young. During cross-examination, Mr. Sheets's counsel asked Mr. Young if he had a girlfriend, for the apparent purpose of establishing why Mr. Young had not slept in the same bed as T.M. The inquiry caused the prosecutor to call for another side bar to confirm that the parties were "still operating under the understanding *1006 that the rape shield law [was] in effect." Report of Proceedings (RP) at 241. Later in the cross-examination, defense counsel questioned Mr. Young about T.M.'s degree of intoxication. He asked:
Q Did you see anything to indicate that [T.M.] was exceptionally intoxicated that evening?
A Yes.
Q What?
A She had fallen down the stairs.
Q Was that the first time that you noticed that she might have been more intoxicated than the others?
A No. Like I said we had been friends all through high school. And that night when we had gotten home, she was pretty flirtatious towards me.
Q The time that she went down the stairs 
RP at 244-45. The prosecutor then requested another side bar, stating: "It looks like we have a redo on our hands." RP at 245.
¶ 7 Initially, the court indicated that it would provide the jury with a limiting instruction. After listening to counsel, the court ordered a recess to consider the issue. At that time, both the prosecutor and defense counsel stated they did not want a mistrial. The court returned, deciding not to call a mistrial. The prosecutor then requested to make a record, arguing "it will be a manifest [injustice] if a mistrial is not declared in this case." RP at 251-52. Defense counsel had "nothing further to add." RP at 252. The court then changed its mind, concluding the jury "wouldn't hear anything" and declared a mistrial. RP at 252.
¶ 8 Mr. Sheets unsuccessfully requested dismissal of the charge against him based on double jeopardy. This appeal follows.

ANALYSIS
¶ 9 This court reviews a trial court's order denying a motion to dismiss for manifest abuse of discretion. State v. Gary J.E., 99 Wash.App. 258, 261, 991 P.2d 1220 (2000) (citing State v. Hanna, 123 Wash.2d 704, 715, 871 P.2d 135 (1994)). "A trial court abuses its discretion if its decision is based on untenable grounds or is made for untenable reasons." State v. Andrews, 66 Wash.App. 804, 810, 832 P.2d 1373 (1992) (citing Davis v. Globe Mach. Mfg. Co., 102 Wash.2d 68, 77, 684 P.2d 692 (1984)).
¶ 10 A retrial is permitted when the mistrial is based on a "manifest necessity." State v. Melton, 97 Wash.App. 327, 331, 983 P.2d 699 (1999). "The trial judge is `vested with broad discretionary power to determine whether a trial should be aborted prior to verdict.'" Id. at 331-32, 983 P.2d 699. However, the court must "engage in a `"scrupulous exercise of judicial discretion" ' before foreclosing a defendant's `"valued right to have his trial completed by a particular tribunal." '" Id. at 332, 983 P.2d 699 (quoting Arizona v. Washington, 434 U.S. 497, 519, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)) (footnote omitted). Moreover, a court's discretion is not so wide when the State seeks a mistrial over the defendant's objection; in those circumstances, "`extraordinary and striking circumstances' must exist before the judge's discretion can come into play." State v. Jones, 97 Wash.2d 159, 164, 641 P.2d 708 (1982).
¶ 11 A basic tenet of our constitutional freedoms is the prohibition against a second trial for the same offense: No person shall be "twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend V. Mirroring the federal constitution, article I, section 9 of the Washington Constitution provides: "No person shall ... be twice put in jeopardy for the same offense."
¶ 12 Once a jury has been empanelled and sworn, jeopardy attaches. Once jeopardy has attached, the court must determine whether a retrial is barred. "A trial judge's decision to declare a mistrial without the defendant's consent after jeopardy has attached but before the jury reaches a verdict will not in every instance bar retrial." State v. Eldridge, 17 Wash.App. 270, 276, 562 P.2d 276 (1977) (citing Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)).
¶ 13 The Sixth Amendment to the United States Constitution protects the right to confront and cross-examine adverse witnesses. *1007 State v. Hudlow, 99 Wash.2d 1, 14-15, 659 P.2d 514 (1983). The protection, however, is limited to the right to present only relevant evidence, meaning evidence that is both material and probative. State v. Clark, 78 Wash.App. 471, 477, 898 P.2d 854 (1995).
¶ 14 Evidence of a victim's past sexual behavior is inadmissible on the issues of credibility and consent. RCW 9A.44.020(2). The statute requires a pretrial motion by the defendant to introduce such evidence. RCW 9A.44.020(3)(a). The purpose of the rape shield statute is to prevent prejudice arising from promiscuity and by suggesting a "logical nexus between chastity and veracity." State v. Peterson, 35 Wash.App. 481, 485, 667 P.2d 645 (1983). Additionally, the statute is designed to encourage rape victims to prosecute and also to eliminate prejudicial evidence which has little, if any, relevance. State v. Cosden, 18 Wash.App. 213, 218, 568 P.2d 802 (1977). The statute, however, does not establish a blanket exclusion where the purpose of the evidence is highly relevant. Id.
¶ 15 The dispositive issue is whether the court acted within its discretion in declaring a mistrial. We begin our discussion by acknowledging the trial court is generally accorded wide discretion in ruling on a motion for a mistrial. Jones, 97 Wash.2d at 163-64, 641 P.2d 708. The court's discretion here, where the defendant has objected to the mistrial, is limited by the requirement that there must exist "extraordinary and striking circumstances" before the court may act. Id. at 164, 641 P.2d 708.
¶ 16 At trial, Mr. Sheets's defense was that his sexual contact with T.M. was consensual. In contrast, the State argued that T.M. was too intoxicated to have consented. The degree of T.M.'s intoxication was not only an important issue in Mr. Sheets's trial, it was an issue made relevant by the State's theory of the case. During Mr. Young's cross-examination, Mr. Sheets's counsel asked Mr. Young why he believed T.M. was intoxicated. He stated that he had known T.M. for some time and, on that evening, she was uncharacteristically flirtatious with him.
¶ 17 The testimony presented the court with a number of problems. First, the court had previously instructed the jury to disregard counsel's statement about this evidence. Second, the evidence may not have been admissible under the rape shield statute to show either T.M.'s credibility or her consent to sexual contact with Mr. Sheets. Third, there had been no pretrial motion to introduce the evidence. On the other hand, the evidence was material and probative on another issue in the case  T.M.'s degree of intoxication. As a general rule, evidence tending to establish the defendant's theory of the case, or to qualify or disprove the State's theory, is normally relevant and admissible. State v. Harris, 97 Wash.App. 865, 872, 989 P.2d 553 (1999).
¶ 18 After reflection and study, the court ultimately opined that the information solicited by the defense counsel was admissible. The court explained that RCW 9A.44.020 "talks about past sexual behavior." RP at 247. Applying the statute to this case, the court distinguished between T.M.'s "past conduct" and her conduct on the "evening in question." RP at 248. As the court saw it, her conduct on the evening in question was admissible, while her past sexual conduct was not admissible. Also, the court reasoned that the conduct was admissible because the conduct was "part of the defense theory." RP at 248. Apparently the court reasoned that the importance of the evidence to Mr. Sheets's theory of the case outweighed its prejudicial impact.
¶ 19 The court's rationale for not declaring a mistrial makes sense. As explained in Hudlow, the rape shield statute does not violate a defendant's constitutional right to confrontation precisely because the statute does not preclude evidence of high probative value. Hudlow, 99 Wash.2d at 15, 659 P.2d 514. Here, Mr. Young's testimony about the victim's uncharacteristic flirtatious behavior on the evening in question barely qualifies as past sexual conduct. Even if the evidence qualifies as past sexual conduct, its prejudicial impact can fairly be described as low. By comparison, Mr. Sheets's testimony about T.M.'s degree of intoxication had high probative value.
*1008 ¶ 20 After hearing the court's reasons for not declaring a mistrial, the prosecutor asked for the opportunity to make a record. Essentially, the State argued that the statement was inadmissible because the defense had failed to give the State the written pretrial motion required by RCW 9A.44.020(3)(a). Also, the State argued that even if the rape shield did not bar the evidence, the evidence should be excluded based upon probative versus prejudicial analysis. In the prosecutor's words:
There can be no showing by the defense of how this information is relevant to this case. The State doesn't have to prove the defendant knew [T.M.] was drunk. The State has to prove that [T.M.] was drunk to the point she didn't understand that she said yes, if she did say yes, or that she was passed out when the defendant raped her.... And so even if it wasn't covered under rape shield, which the State believes it is, then it certainly cannot come in under the probative versus prejudicial balancing test.
RP at 250. This argument persuaded the trial court to change its ruling for the second time.
¶ 21 The trial court explained that it was granting a mistrial because a limiting instruction would not work. The court said:
It would be [a] gut reaction, the gut feeling it wouldn't hear anything. It's like that old cartoon, the jury is instructed to disregard what the witness just said, and the jurors are all sitting there with their hair straight up in the air.
RP at 252. Except for its reservations about the effectiveness of limiting instructions, the court did not address its prior analysis and ruling.
¶ 22 What is missing from this record is the presence of extraordinary and striking circumstances required in declaring a mistrial. Mr. Young testified that he had known T.M. for some time and that she was not normally flirtatious. On this evening, she was and, for that reason, he decided that she was intoxicated. This is hardly the kind of testimony that would stand a juror's hair straight up in the air. Even if the court decided there was a problem with the testimony, the problem should have been corrected by instructing the jury about the limited purpose of the testimony. Moreover, we agree with the court's first and only analysis of the issue  the evidence was admissible and not barred by the rape shield statute.
¶ 23 Reversed and remanded for the entry of an order of dismissal with prejudice.
I CONCUR: SCHULTHEIS, J.
BROWN, J.  (dissenting).
¶ 24 During opening statements the defense surprised the State by suggesting T.M. was flirting with Ryan Young on the previous night to the crime. During Mr. Young's cross-examination, defense counsel asked about why Mr. Young did not sleep in the same bed as T.M. Jayson Sheets suggests these questions were relevant to the victim's intoxication, but her intoxication was an undisputed fact. The victim's alleged sexual behavior with Mr. Young is foreclosed by the rape shield law. Placing the victim on trial promotes jury confusion and creates unfair prejudice.
¶ 25 Although the trial court was first inclined to provide a limiting instruction after the improper cross-examination, it ordered a recess to think about the issue. After returning to the bench, the court initially reasoned against a mistrial. Upon reconsideration, the court finally reasoned the jury "wouldn't hear anything" if a limiting instruction was given and declared a mistrial. RP at 252. Unlike this court, the trial court is uniquely situated to judge the damage, after viewing the impact of incidents upon the jury.
¶ 26 A retrial is permitted when the mistrial is based on a "manifest necessity." State v. Melton, 97 Wash.App. 327, 331, 983 P.2d 699 (1999). "The trial judge is `vested with broad discretionary power to determine whether a trial should be aborted prior to verdict.'" Id. at 331-32, 983 P.2d 699 (quoting State v. Eldridge, 17 Wash.App. 270, 276-77, 562 P.2d 276 (1977)). Under Melton, we review for "manifest necessity" based upon "(1) whether the court act[ed] precipitately ... [or] gave both defense counsel and the prosecutor full opportunity to explain their positions; (2) whether it accorded careful consideration to [the defendant's] interest in *1009 having the trial concluded in a single proceeding; and (3) whether it considered alternatives to declaring a mistrial." Id. at 332, 983 P.2d 699.
¶ 27 The trial court properly applied the Melton factors. First, the court gave both defense counsel and the prosecutor an opportunity to explain their positions. Second, instead of ruling at the moment on the issue, the court called for a recess to research the issue. Third, the court initially considered giving a limiting instruction but concluded such instruction would not be of any use. This conclusion could have been in response to the State's observation that once Mr. Young testified to T.M.'s flirtatious behavior, "a large number of pens hit the paper amongst the jury." RP at 245. Our review standard is whether the court "considered alternatives" in determining whether there was an abuse of discretion. Melton, 97 Wash.App. at 332, 983 P.2d 699. The trial court considered a limiting instruction, but decided against it. Given this record, the judge acted within her broad discretion in declaring a mistrial. Accordingly, the trial court did not err.
¶ 28 Because the court reasonably found a manifest necessity existed, jeopardy did not terminate. Therefore, Mr. Sheets will not suffer double jeopardy by a retrial.
¶ 29 I would affirm. Therefore, I respectfully dissent.