# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　　Respondent,<br><br>　v.<br><br>JESSE C. GOULEY,<br><br>　　　　　　　　　Appellant. | No. 54468-7-II<br><br><br><br>PUBLISHED OPINION |

CRUSER, J. – Jesse Gouley appeals his conviction of first degree unlawful possession of a firearm,[1] arguing that (1) the State did not present sufficient evidence to sustain his conviction of unlawful possession of a firearm, (2) the trial court made an improper comment on the evidence in giving the jury a nonstandard instruction for the definition of a firearm, (3) he was deprived of his right to a fair trial because the prosecutor engaged in misconduct, (4) he is entitled to resentencing following the supreme court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and (5) the criminal filing fee was improperly imposed because he is indigent. In addition, (6) Gouley raises two arguments in a statement of additional grounds (SAG).

---

[1] Gouley was also convicted of escape from community custody, but he does not appeal that conviction.

We hold that (1) the State presented sufficient evidence to sustain Gouley's first degree unlawful possession of a firearm conviction, (2) Gouley failed to preserve the error regarding the trial court's comment on the evidence, (3) Gouley waived any error arising from the prosecutor's alleged misconduct, (4) Gouley is entitled to resentencing under *Blake*, and (5) the trial court did not make an adequate inquiry into Gouley's ability to pay before imposing the criminal filing fee. We further hold that (6) neither of Gouley's SAG claims has merit.

Accordingly, we affirm Gouley's conviction but remand for resentencing.

FACTS

I. ARREST

Gouley was convicted of a felony and was under community supervision when he missed an appointment with his community corrections officer, Donovan Russell. Because of Gouley's failure to report, the Department of Corrections issued a warrant for Gouley's arrest.

Several officers, including Russell, attempted to locate Gouley at his listed residence to execute the warrant. The officers found Gouley asleep in his bedroom. In searching the bedroom, the officers discovered a shotgun under Gouley's bed. Gouley was previously convicted of a serious offense and was prohibited from possessing a firearm.

After Gouley had been placed in the squad car, he told Russell that the shotgun belonged to him and had been given to him by his great uncle. The shotgun was a 20-gauge bolt action shotgun made by Kessler Arms. Although the company was only in business for two years, between 1951 and 1953, the shotgun is not rare and is relatively inexpensive. When the shotgun was discovered under Gouley's bed, it was missing a bolt action assembly and was not operable in that condition.

2

The State charged Gouley with one count of first degree unlawful possession of a firearm and one count of escape from community custody.

## II. TRIAL

During trial, the State's expert witness, Johan Schoeman, described the measures that would need to be implemented to make the shotgun operable. After noting that the shotgun was not operable in its present state, the expert opined that to make the shotgun operable a bolt or bolt action must be inserted into the receiver of the firearm. A bolt action for that particular shotgun is readily available for purchase online and can be purchased by a credit card and shipped. There are no restrictions on purchasing the part.

Aside from the missing bolt action, the expert did not observe any other defects in the firearm. However, according to the expert, the only way to truly determine whether the shotgun is operable would be to load the shotgun and fire it. He noted that even with a bolt action, there was still a possibility that the shotgun would not fire if there was an issue with the firing pin, the trigger spring, or the firing pin spring.

Prior to trial, Gouley stipulated to the admissibility of his custodial statements that the shotgun belonged to him and was given to him by his great uncle. The State referenced Gouley's custodial statements in both its closing and opening arguments. During closing, the State made the following argument:

> Keep in mind this is a gun handed down to him from his generations. He knows about this gun. It presumably worked when he has it. I'll submit to you he took off that bolt action fire -- he took off the bolt action because in his mind he's thinking if that's not with the gun, DOC is not going to put this charge on me.
>
>  . . . .

3

> I still submit to you that part, Mr. Gouley knows where it's at. Why? Because when he told DOC that that's my shotgun, he didn't say that that's my shotgun and it doesn't work; that's my shotgun and it's an antique; that's my shotgun and it's just for show. No, he said it's my shotgun.

Report of Proceedings (RP) at 323-24.

In instructing the jury on the definition of a firearm, the trial court gave the jury the State's proposed instruction that included language regarding inoperable firearms. The instruction provided that a "temporarily inoperable firearm that can be rendered operational with reasonable effort and within a reasonable time," and a "disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time" meet the definition of a firearm. Clerk's Papers (CP) at 38. Gouley consented to the use of this instruction.

The jury convicted Gouley of first degree unlawful possession of a firearm and of escape from community custody. Gouley's offender score was 9 plus and included several convictions of unlawful possession of a controlled substance.

During sentencing, the trial court briefly inquired into whether Gouley would be able return to his current place of employment upon serving his sentence and whether Gouley would be able to pay his legal financial obligations (LFOs). The court found that Gouley had a future ability to pay his LFOs and imposed the $200 criminal filing fee and the $500 crime victim penalty assessment.

Gouley appeals his conviction of first degree unlawful possession of a firearm and challenges his sentence.

DISCUSSION

I. SUFFICIENCY OF THE EVIDENCE

Gouley was convicted of unlawful possession of a firearm under former RCW 9.41.040(1), which provides that a person is guilty of the crime of unlawful possession "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter."

Gouley does not dispute that he has been previously convicted of a serious offense as defined in chapter 9.41 RCW. But he contends that the evidence was insufficient to sustain his unlawful possession of a firearm conviction because the State did not set forth sufficient evidence that the shotgun was a "firearm" as defined under former RCW 9.41.010(9) (2017) because the State did not prove that the shotgun could be made operable with reasonable effort in a reasonable amount of time. We disagree.

A. LEGAL PRINCIPLES

*1. Standard of Review*

To determine whether the evidence is sufficient to sustain a conviction, we consider whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). The defendant admits the truth of the State's evidence, and we must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the State. *Id*. at 265-66.

Whether a given object fits within the statutory definition of "firearm" in former RCW 9.41.010(9) is a question of statutory interpretation that we review de novo. *State v. Raleigh*, 157 Wn. App. 728, 734, 238 P.3d 1211 (2010).

*2. Definition of a "Firearm" Under Former RCW 9.41.010(9)*

A "firearm" as defined in former RCW 9.41.010(9) is a "weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." To qualify as a firearm within the meaning of former RCW 9.41.010(9), the firearm "need not be operable during the commission of a crime." *Raleigh*, 157 Wn. App. at 734; *see also State v. Olsen*, 10 Wn. App. 2d 731, 737, 449 P.3d 1089 (2019). Instead, the dispositive inquiry is "whether the firearm is a 'gun in fact' rather than a 'toy gun.'" *Raleigh*, 157 Wn. App. at 734 (quoting *State v. Faust*, 93 Wn. App. 373, 380, 967 P.2d 1284 (1998)).

In *Olsen*, the defendant challenged a trial court's decision to instruct the jury regarding the definition of a firearm based on WPIC 2.10,[2] which followed the statutory definition of a firearm in former RCW 9.41.010(9). *Olsen*, 10 Wn. App. 2d at 734-35. There, the trial court declined to give Olsen's proposed instructions that to constitute a firearm, the device must be "capable of being fired either instantly or with reasonable effort and within a reasonable time" and that the state must present sufficient evidence that the firearm was operable. *Id.* at 734.

We clarified in *Olsen* that despite prior confusion in the decisions issued by our court, there is no requirement that the State set forth evidence showing that the device was operable at the time of the offense. *Id.* at 738. Rather, we agreed with *Raleigh* that the State's burden was to prove that the firearm was a "'gun in fact,'" as opposed to a toy gun. *Id.* at 737-38 (quoting *Raleigh*, 157 Wn. App. at 734). We further held that there was no instructional error. *Id.*

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10 (4th ed. 2016) (WPIC).

Consequently, whether a firearm can be rendered operational with reasonable effort and within a reasonable time period is immaterial to whether the firearm is a "firearm" under former RCW 9.41.010(9). *Id.*; *Raleigh*, 157 Wn. App. at 734; *see also Faust*, 93 Wn. App. at 380 (holding that the definition of "firearm" is not limited "to only those guns capable of being fired during the commission of the crime"). Instead, the State must set forth evidence showing that the firearm is "a gun in fact, not a toy gun; and the real gun need not be loaded or even capable of being fired to be a firearm." *Faust*, 93 Wn. App. at 380.

B. APPLICATION

The State presented evidence sufficient to show that the device at issue was a firearm as defined under former RCW 9.41.010(9) because it was a gun in fact and not a toy. Schoeman described the shotgun as a "Kessler Arms 20 gauge bolt action shotgun." RP at 175. He stated that although the shotgun was produced by the Kessler company, which was in operation for only two years, the shotgun is not rare, and it is affordable and readily obtainable. Although the shotgun was missing a bolt action, Schoeman testified that the gun could be made operable and could fire if a bolt or bolt assembly is inserted into the receiver.

Gouley does not dispute that the shotgun was a gun in fact, but he argues that this is not enough for the State to meet its burden. Gouley points to the fact that beyond the missing bolt action, the State's expert opined that the shotgun might still not fire because "there might be something wrong with the firing pin of that firearm or maybe the trigger spring, or the firing pin spring." *Id.* at 177-78.

However, the fact that the shotgun was defective or inoperable when it was discovered does not mean that the shotgun was a toy, or anything other than a "gun in fact." *See Faust*, 93

7

Wn. App. at 380. And whether the device was a gun in fact is the only relevant determination that the jury had to make. *See Olsen*, 10 Wn. App. 2d at 738. The foregoing evidence was sufficient to establish that the device recovered in Gouley's bedroom was a gun in fact, meeting the definition of firearm under former RCW 9.41.010(9).

## II. JUDICIAL COMMENT

Gouley argues that the trial court's instruction regarding the definition of a "firearm" was an impermissible comment on the evidence because in instructing the jury that a device is a firearm if it can be made operable with reasonable effort and in a reasonable amount of time, it suggested to the jury that the shotgun discovered under Gouley's bed could be rendered operable. Although Gouley did not object to the instruction before the trial court, and affirmatively assented to it, he argues that the error is reviewable under RAP 2.5(a)(3) as a manifest error affecting a constitutional right. We disagree.

### A. LEGAL PRINCIPLES

A judge is prohibited from expressing to the jury his or her personal attitudes regarding the merits of the case or instructing the jury that issues of fact have been established as a matter of law under article IV, section 16 of the Washington Constitution. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). We will presume a judicial comment was prejudicial, "and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Id.* at 723. Where a jury instruction "does no more than accurately state the law pertaining to an issue," that instruction "does not constitute an impermissible comment on the evidence by the trial judge." *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

8

We will generally refuse to review a claim of error that was not raised at the trial court. RAP 2.5(a). However, we will review a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3). Because a judicial comment on the evidence is prohibited by the Washington Constitution, a claimed error based on such a comment is of constitutional magnitude. *Levy*, 156 Wn.2d at 719-20. However, not all constitutional errors are reviewable under RAP 2.5. *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007).

To determine whether the error was manifest, there must be a showing of "'actual prejudice,'" which requires a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting *Kirkman*, 159 Wn.2d at 935). [3]

B. APPLICATION

We decline to consider this claim for the first time on appeal because Gouley has not shown that he is entitled to review of this claim under RAP 2.5(a)(3). Although a judicial comment is an error of constitutional magnitude, Gouley has not shown that this alleged judicial comment was a manifest error that resulted in actual prejudice in his case. *See O'Hara*, 167 Wn.2d at 99.

Here, the trial court instructed the jury as follows:

A firearm is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.

---

[3] The supreme court's decision in *Levy* purports to classify a judicial comment on the evidence as a type of error that is manifest by its very nature and that does not require a separate showing of actual prejudice in the particular case. *See Levy*, 156 Wn.2d at 719-20. Therefore, a judicial comment on the evidence would always constitute a reviewable error regardless of whether there was a contemporaneous objection. *See id.* We decline to apply this approach given the clarification in subsequent decisions such as *O'Hara* and *Kirkman* that an error must be both of constitutional magnitude and manifest to meet the exception in RAP 2.5(a)(3). *See O'Hara*, 167 Wn.2d at 99; *Kirkman*, 159 Wn.2d at 934.

> A temporarily inoperable firearm that can be rendered operational with reasonable effort and within a reasonable time period is a "firearm."

> A disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time is a "firearm."

CP at 38. In contrast, the WPIC instruction that Gouley contends the trial court should have used states "A firearm is a weapon or device from which a projectile may be fired by an explosive such as gunpowder." WPIC 2.10.

Gouley's theory of the case was that the State could not prove he unlawfully possessed a firearm because the firearm in question was inoperable and could not be made operable with a reasonable amount of effort and within a reasonable amount of time. The jury instruction Gouley now challenges enabled him to argue this theory despite the question of operability being legally irrelevant. As we held in *Olsen*, the only question for the jury to decide is whether the firearm is a gun in fact. 10 Wn. App. 2d at 737-38. Operability at the moment the gun is possessed is not something the State must prove. *Id.* at 738. An instruction which introduced operability as an issue could only have aided Gouley in advancing his theory of the case.

Thus, even if the instruction was erroneous because it did not properly state the law, the instruction allowed the jury to consider Gouley's theory and made the State's case more difficult to prove. And Gouley assented to the nonstandard instruction, suggesting he recognized that the additional language regarding operability was beneficial to his case. Moreover, nothing in the language of the instruction suggests that the trial court *took a position* on whether the gun could be rendered operable with reasonable effort and in a reasonable period of time.

10

Accordingly, Gouley fails to show that any alleged error resulting from the instruction was manifest as required under RAP 2.5(a)(3), and we decline to consider this claim for the first time on appeal.[4]

### III. PROSECUTORIAL MISCONDUCT

Gouley argues that the prosecutor engaged in misconduct by referencing Gouley's right to remain silent, and by inviting the jury to speculate regarding facts not in evidence.[5] Because Gouley did not object to the prosecutor's statements and did not establish that the alleged misconduct was so flagrant and ill-intentioned that an instruction could not have obviated any resulting prejudice, Gouley failed to preserve these arguments for appeal.

A. LEGAL PRINCIPLES

The right to a fair trial in a criminal case is guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and under article I, section 22 of the Washington Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Where there has been prosecutorial misconduct in obtaining a conviction, the criminal defendant may have been deprived of the constitutional right to a fair trial. *Id.* at 703-04. To prevail in a prosecutorial misconduct claim, "the defendant bears the burden of proving that the prosecutor's

---

[4] Even if we reviewed this issue for the first time on appeal, no prejudice could have resulted from the trial court's instruction to the jury for the same reasons that the error here was not manifest: the instruction enabled Gouley to argue his theory of the case, and the instruction in no way suggested the trial court's opinion on the evidence. Consequently, Gouley's claim fails even if we were to reach the merits.

[5] Gouley also argues that the prosecutor's comments improperly shifted the burden of proof onto him. However, Gouley does not provide any argument or support for this assertion. Therefore, we do not consider this issue. *See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) ("[T]his court will not review issues for which inadequate argument has been briefed or only passing treatment has been made.").

conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We review the challenged conduct "in the context of the whole argument, the issues of the case, the evidence addressed in argument, and the instructions given to the jury." *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018).

We employ one of two tests to determine whether reversal is required based on prosecutorial misconduct. *Emery*, 174 Wn.2d at 760-61. When the defendant objected to the claimed misconduct below, the defendant must show (1) that the prosecutor's remarks were improper, and (2) that there is a substantial likelihood the misconduct affected the verdict. *Id.* at 760.

When the defendant does not object to the prosecutor's remarks, a defendant waives the prosecutorial misconduct claim unless the defendant shows (1) that comments were improper, (2) that the prosecutor's comments were both flagrant and ill-intentioned, (3) that the effect of the improper comments could not have been obviated by a curative instruction, and (4) a substantial likelihood the misconduct affected the verdict. *Id.* at 760-61.

When a non-objecting defendant fails to show that the improper remarks were incurable, the claim "necessarily fails and our analysis need go no further." *Id.* at 764. Moreover, a defendant might succeed in showing incurable prejudice from the improper statements and yet fail to demonstrate a substantial likelihood that the misconduct affected the verdict. *Id.* at 764 n.14.

In evaluating whether the defendant has overcome waiver in cases where an objection was not lodged, we will "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.[6]

The defendant's burden of establishing prejudice in a prosecutorial misconduct claim is not altered where the challenged conduct "touched upon the defendants' constitutional rights," nor does touching on a defendant's constitutional rights render the prosecutor's comments "per se incurable." *Id.* at 763. In *Emery*, the court expressly declined to adopt the constitutional harmless

---

[6] It has been said that there is a "heightened" standard of review in cases where the defendant did not object to the alleged misconduct below. *See e.g.*, *Emery*, 174 Wn.2d at 760-61. We take this opportunity to explain that, in our view, the standard announced by the supreme court in *Emery* for evaluating prosecutorial misconduct is more properly considered a test for reversal than a standard of review. *Id.* A standard of review is akin to a "'measuring stick'" intended to "frame the issues, define the depth of review, assign power among judicial actors, and declare the proper materials to review." Steven Alan Childress, STANDARDS OF REVIEW PRIMER: FEDERAL CIVIL APPEALS, 229 F.R.D. 267, 268-69 (2005) (quoting John C. Godbold, TWENTY PAGES AND TWENTY MINUTES—EFFECTIVE ADVOCACY ON APPEAL, 30 SW. L.J. 801, 810 (1976)). To that end, "'[s]tandards of review were never meant to be the end of the inquiry, but rather a frame and a limit on the substantive law.'" W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1045, 10 (1993) (quoting STEVEN A. CHILDRESS & MARTHA S. DAVIS, STANDARDS OF REVIEW § 1.3, at 21 (1986)). Rather than provide a lens through which we must view the claim, as in a standard of review, the test in *Emery* sets forth the elements a defendant must satisfy to obtain relief. In this way, the test for reversal in prosecutorial misconduct cases is similar to the classic pronged test we apply to claims of ineffective assistance of counsel. *See, e.g.*, *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001) ("Washington has adopted the *Strickland* test to determine whether a defendant had constitutionally sufficient representation."); *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011), ("To satisfy the prejudice prong of the *Strickland* test").

error standard for evaluating prejudice in prosecutorial misconduct claims where the claims implicate constitutional issues. *Id.* at 765.[7]

B. APPLICATION

Gouley challenges the prosecutor's statements during opening and closing argument that Gouley did not deny owning the shotgun and that Gouley did not deny that the shotgun was operable. Gouley contends that these comments amounted to an improper comment on his right against self-incrimination protected under the Fifth Amendment of the United States Constitution. In addition, Gouley challenges the prosecutor's suggestion during closing argument that Gouley removed and hid the bolt action as introducing facts that were not supported by the evidence. Gouley did not object to the prosecutor's comments and must therefore satisfy the four-part test for reversal outlined above. *See id.* at 760-61.

The prosecutor's first statement, that Gouley did not deny owning the shotgun, was not improper. The Fifth Amendment right against self-incrimination precludes the State from eliciting testimony or making arguments related to a defendant's silence as substantive evidence of the defendant's guilt. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). Gouley stipulated to admissibility of custodial statements without need for a CrR 3.5 hearing. Gouley told his community corrections officer that the shotgun belonged to him and not to his sister. Therefore, the prosecutor's comment that Gouley did not disclaim ownership over the shotgun is not an

---

[7] An exception to this rule is carved out in cases where "a prosecutor flagrantly or apparently intentionally appeals to racial bias in a way that undermines the defendant's credibility or the presumption of innocence." *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). In such circumstances, we apply the constitutional harmless error standard and "will vacate the conviction unless it appears beyond a reasonable doubt that the misconduct did not affect the jury's verdict." *Id*.

impermissible reference to Gouley's silence, but rather a paraphrase of a statement that Gouley made to his community corrections officer.

The prosecutor's statement that Gouley did not deny that the gun was operable may have been an improper comment on Gouley's prearrest silence. *See State v. Fuller*, 169 Wn. App. 797, 815, 282 P.3d 126 (2012) (explaining that even where a suspect elects to speak with law enforcement, "the suspect may exercise the right to silence in response to any question and the State cannot use that partial silence against him at trial.") (citing *Hurd v. Terhune*, 619 F.3d 1080, 1088 (9th Cir. 2010)). In addition, the State's suggestion that Gouley removed and hid the bolt action may have been improper given that the State did not present evidence in support of that conjecture. *See State v. Loughbom*, 196 Wn.2d 64, 76-77, 470 P.3d 499 (2020) (In closing argument, "prosecutors have 'wide latitude to argue reasonable inferences from the evidence,' but they 'must seek convictions based only on probative evidence and sound reason.'" (internal quotation marks omitted) (quoting *Glasmann*, 175 Wn.2d at 704).

But even assuming, without deciding, that the prosecutor's statements were improper, Gouley has not shown that any error arising from these statements could not have been obviated by a curative instruction. Gouley gives us no reason to assume or conclude that an instruction from the trial court to disregard the prosecutor's remarks would not have cured any prejudice resulting from the remarks, particularly in light of the fact that the jury is presumed to follow the trial court's instructions. *See State v. Clark*, 187 Wn.2d 641, 654, 389 P.3d 462 (2017). Incurable prejudice has been described as that which, in effect, causes a mistrial because nothing short of a new trial can repair the injury caused by the prosecutor's remarks. *Emery*, 174 Wn.2d at 762. While Gouley questions the effectiveness of curative instructions generally in cases where the prosecutor touches

on the defendant's right to silence, he has not shown that the prosecutor's conduct here was so egregious as to create incurable prejudice tantamount to a mistrial. *See id.*[8]

Instead, Gouley's argument is focused largely on the fact that because the challenged conduct implicates his constitutional right against self-incrimination, he is entitled to reversal of the unlawful possession of a firearm conviction because the State cannot show that the error was harmless beyond a reasonable doubt. But as we explained above, our supreme court has rejected the use of the constitutional harmless error standard in all but the most egregious cases of prosecutorial misconduct, such as when the prosecutor appeals to racial bias or prejudice.[9] *Id.* at 757.

Gouley has not shown that the impropriety, if any, in the prosecutor's remarks could not have been remedied by a curative instruction. *See id.* at 760-61. This is especially so given that the jury was instructed that "[t]he lawyers' remarks, statements, and arguments . . . are not evidence"

---

[8] To support his claim that an instruction would not cure the alleged error, Gouley relies solely on *State v. Curtis*, 110 Wn. App. 6, 37 P.3d 1274 (2002). *Curtis* was not a prosecutorial misconduct case, but rather a challenge to the admission of testimony that the defendant invoked his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *Curtis*, 110 Wn. App. at 10-11. After concluding the claim could be reviewed for the first time on appeal, the court held that the State had not demonstrated that the error was harmless beyond a reasonable doubt. *Id.* at 14-16. In dicta, the court opined on the difficulty of the decision whether to object to such testimony, suggesting that defense counsel would understandably fear that by objecting and requesting a curative instruction, the objection would unduly emphasize the inadmissible evidence. *Id.* at 16. The court noted that some courts, including the Ninth Circuit, have "expressed doubt about the effectiveness of curative instructions." *Id.* at 15. The *Curtis* court itself did not express this doubt. Further, as we note above, this portion of the *Curtis* opinion is dicta. We are not persuaded that *Curtis* calls our reasoning into doubt.

[9] Gouley relies on *Fuller*, 169 Wn. App. at 813 to support his assertion that where the alleged misconduct amounts to a violation of the defendant's constitutional rights, we employ the constitutional harmless error standard for analyzing prejudice. We decline to follow *Fuller* on this point, insofar as *Fuller* is inconsistent with *Emery*.

and that it "must disregard any remark, statement, or argument that is not supported by the evidence or the law." CP at 29. The jury is presumed to follow the court's instructions. *Kirkman*, 159 Wn.2d at 928. As such, Gouley's prosecutorial misconduct claims fail.

## IV. *STATE V. BLAKE*

Gouley argues, and the State concedes, that Gouley must be resentenced in light of the supreme court's decision in *Blake*, 197 Wn.2d 170. We agree.

After Gouley was sentenced, the supreme court decided *Blake*, holding that Washington's strict liability drug possession statute, former RCW 69.50.4013(1) (2017), violates state and federal due process clauses and is void. 197 Wn.2d at 195. A conviction cannot be sustained on a void statute. *See State v. Rice*, 174 Wn.2d 884, 893, 279 P.3d 849 (2012). In addition, "a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." *In re Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002).

Gouley's criminal history includes convictions for possession of a controlled substance that increased his offender score. These convictions are now invalid under *Blake* and cannot be considered in calculating his offender score. Because Gouley was sentenced under an incorrect offender score, he must be resentenced.

## V. LFOs

Gouley argues that the trial court erred by imposing the $200 criminal filing fee because he was indigent. Because the trial court failed to make an adequate individualized inquiry into Gouley's ability to pay the LFOs, we remand so that the trial court can make the necessary findings.

A. LEGAL PRINCIPLES

Under RCW 36.18.020(2)(h), a criminal filing fee may not be imposed "on a defendant who is indigent as defined in RCW 10.101.010(3) (a) through (c)." A person is indigent under RCW 10.101.010(3) (a) through (c) if he or she receives certain types of public assistance, is involuntarily committed to a public mental health facility, or receives an annual after-tax income of 125 percent or less of the current federally established poverty level. But RCW 36.18.020(2)(h) does not proscribe imposition of the criminal filing fee on individuals who are indigent as defined in RCW 10.101.010(3)(d), meaning that person is unable to pay the anticipated costs of counsel based on available funds.

In *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015), the supreme court held that trial courts are required to make "an individualized inquiry into the defendant's current and future ability to pay" before imposing discretionary costs. An adequate inquiry involves, at minimum, a consideration of the effects of incarceration and other debts, as well as whether the defendant meets the GR 34 standard for indigency. *Blazina*, 182 Wn.2d at 838. Employment history, income, assets and other financial resources, monthly living expenses, and other debts are likewise relevant in evaluating a defendant's ability to pay an LFO. *State v. Ramirez*, 191 Wn.2d 732, 744, 426 P.3d 714 (2018). Before a trial court can impose a discretionary cost, "the record must reflect that the trial court inquired into all five of these categories." *Id.*

B. APPLICATION

Here, the trial court's inquiry into Gouley's ability to pay was limited to two vague questions that did not satisfy the requirements set forth in *Blazina* and *Ramirez*. The trial court asked Gouley whether he would be able to resume working at his present place of employment

after serving his sentence, and Gouley responded that he could. The trial court also asked Gouley whether he would be able to pay his LFOs, which included the $200 criminal filing fee and a $500 crime victim penalty assessment. Gouley averred that he would be able to pay the obligation. Without conducting any further inquiry, the trial court found that Gouley "will have the future ability to meet his legal financial obligations." RP at 356. The trial court also signed an order finding that Gouley lacked sufficient funds to prosecute an appeal.

The trial court found that Gouley was indigent as defined under RCW 10.101.010(3)(d), relating to his ability to afford appellate counsel, but it did not make a finding as to whether Gouley was indigent under RCW 10.101.010(3) (a) through (c). Under *Blazina* and *Ramirez*, the trial court's inquiry into Gouley's financial circumstances and ability to pay was inadequate, and the record lacks sufficient evidence from which we can determine Gouley's indigency status. We therefore remand for the trial court to make the necessary findings and to strike the criminal filing fee if Gouley is confirmed indigent as defined in RCW 10.101.010(3) (a) through (c).

## VI. SAG

In his SAG, Gouley argues that the evidence was insufficient to sustain his unlawful possession of a firearm conviction because the State failed to meet its burden of showing that the shotgun was operable. We have already considered and rejected this argument above.

In addition, Gouley argues that he was deprived of effective assistance of counsel because his defense counsel failed to call an expert witness to testify on Gouley's behalf regarding whether the firearm was operable. We disagree.

To prevail on a claim of ineffective assistance of counsel, Gouley must show that defense counsel's performance was deficient, and that the deficient performance was prejudicial. *State v.*

*Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). When an ineffective assistance of counsel claim is raised on direct appeal, we limit our review to matters within the trial court record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). If Gouley does not meet his burden of demonstrating either deficient performance or prejudice, his ineffective assistance claim fails. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Gouley's ineffective assistance of counsel claim fails because he cannot show prejudice. *See id.* Whether an expert was available to testify, and the substance of that testimony, is beyond the trial court record. Consequently, we cannot consider the contents of the theoretical testimony to determine whether it would have been reasonably likely to change the outcome of the trial. *See McFarland*, 127 Wn.2d at 335.

CONCLUSION

We hold that because the State proved that the shotgun Gouley possessed was a gun in fact, the State presented sufficient evidence to sustain Gouley's first degree unlawful possession of a firearm conviction. In addition, we decline to review Gouley's claim that the trial court made an impermissible comment on the evidence, and we hold that Gouley's claim of prosecutorial misconduct fails. However, Gouley is entitled to resentencing in light of *Blake* and in light of the trial court's inadequate inquiry into Gouley's ability to pay LFOs. On remand, we instruct the trial court to determine Gouley's ability to pay LFOs and to make the necessary findings in support of its conclusion. Finally, we hold that the issues raised in Gouley's SAG lack merit.

Accordingly, we affirm Gouley's conviction of first degree unlawful possession of a firearm but remand for resentencing.

No. 54468-7-II

CRUSER, J.

We concur:

GLASGOW, C.

VELJACIC, J.

21