# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57978-2-II |
| Respondent, | |
| v. | |
| AMALORE A. CHINNAPPAN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J. — A jury found Amalore Chinnappan guilty of child molestation in the first degree. The victim, LG, is related to Chinnappan through Chinnappan's wife, Heather, and frequently spent time at Chinnappan's house where Heather provided childcare for LG and her sister. When LG was about nine years old, she reported to her mother that Chinnappan had touched her in a sexual way. LG's mother reported the abuse to the police. The State charged Chinnappan with two counts of child molestation in the first degree. Ultimately, the State dropped one count and a jury found Chinnappan guilty of the remaining count.

Chinnappan now appeals, arguing that he was denied his right to fair trial by jury because his trial was marred by both juror and prosecutorial misconduct. Juror 1 reported in the juror questionnaire that his daughter was a victim of inappropriate sexual conduct. The court questioned juror 1 about this incident and concluded that he would be able to serve as a fair and impartial juror. After the jury delivered its guilty verdict, a different juror contacted defense counsel to raise concerns about how juror 1 impacted deliberations.

Chinnappan argues that juror 1 withheld information during voir dire regarding his daughter's experience with sexual assault, mischaracterized the incident to the court, and then interjected new information during deliberations, in a manner that amounted to juror misconduct. Chinnappan also argues that the prosecutor committed misconduct by vouching for LG's credibility and arguing facts outside of the evidence. The State responds that neither juror 1's statements, nor the statements of the prosecutor amounted to misconduct. We agree with the State.

FACTS

I. BACKGROUND

In October 2020, the State charged Chinnappan with two counts of child molestation in the first degree. The charges arose from an incident where Chinnappan was charged with touching LG's vagina when she was 9 or 10 years old. LG told her mother, KG, what happened and KG reported the events to the police.

Chinnappan is related to LG through his wife, Heather.[1] KG and Heather are cousins. LG frequently spent time at the Chinnappans' home, where Heather provided childcare for KG's children. KG paid Heather a discounted rate and Heather cared for LG and her sister after school, occasionally on weekends, and during the summer. During her time at the Chinnappans' home, LG would typically spend time with the Chinnappans' children, help out on their farm, or go swimming.

According to LG's testimony, the incident occurred one day when she was at the Chinnappans' house and sitting on the couch with Chinnappan in the living room watching TV. Chinnappan told LG to come sit on his lap. Once LG was sitting on Chinnappan's lap, he put "his

---

[1] We refer to Heather Chinnappan by her first name for clarity's sake.

hand down [her] pants." Verbatim Rep. of Proc. (VRP) at 326. LG testified that Chinnappan touched her "tushy" and "clitoris." *Id.* at 328, 330. She estimated that his hand was in her pants for roughly five minutes. Heather was in the shower at the time. Chinnappan asked LG if she "wanted to take it to the room," at which point he carried LG from the couch to his bedroom. *Id.* at 323. Then, Chinnappan placed LG on his bed and walked into the bathroom where Heather was. Soon after, LG got up and left the bedroom to join the other children elsewhere in the house. LG also described an incident where Chinnappan "asked [her] to pick out which underwear he would wear." *Id.* at 325.

LG reported the abuse to KG. She also discussed the events with a forensic interviewer.

## II. JURY TRIAL

LG testified consistently with the facts set forth above. The jury also heard testimony from Heather. Relevant to this appeal, Heather testified that when she uses the bathroom in her home, she typically leaves the door at least partially open. She stated that when she takes a shower, she leaves the bathroom door halfway open. The jury ultimately found Chinnappan guilty of one count of child molestation in the first degree.[2]

A. Juror 1's Statements During Voir Dire and Deliberations

The court questioned juror 1 during voir dire regarding his responses to the juror questionnaire. The questionnaire asked prospective jurors if they themselves, or friends or family members had "been a victim of sexual assault, inappropriate sexual contact, or other sexual misconduct." Clerk's Papers (CP) at 127. Juror 1 responded that his daughter had been a victim to

---

[2] At the close of trial, the State moved to dismiss the second count of child molestation based on insufficient evidence, and the court granted the motion.

"inappropriate sexual conduct." *Id.* He explained that the alleged abuser, his step-father, was charged with "commercial sexual abuse of a minor - solicitation to commit sexual exploitation[, and] communication [with a] minor for immoral purposes." *Id.* The following exchanged occurred between the court and juror 1:

> THE COURT: . . . We called you in here to talk a little bit to ask about question No. 6, which is what had happened to your daughter, and it looked like it was your stepdad who abused your daughter.
>
> PROSPECTIVE JUROR: So it wasn't physical abuse. It was communication, really, and showing of porn. My daughter was 17, so showing her porn and improper communication that was of a sexual nature. Do you want more details on it?
>
> THE COURT: I don't need more details. When did that occur?
>
> PROSPECTIVE JUROR: 2020, July.
>
> THE COURT: And is it resolved through the legal system now?
>
> PROSPECTIVE JUROR: It is, yes. So in March of this year, Judge Evans, that was when he pled guilty to one of the three charges and the other two were dropped and sentencing happened from there, and it resulted in a week of jail time and then [Department Of Corrections] supervision, some treatment, stuff like that.
>
> THE COURT: Were you satisfied with your experience with the legal system?
>
> PROSPECTIVE JUROR: I felt that it was fair. It was long, but COVID also. But at the end of it I knew the prosecutor did their job the best they could, the defender did their job as they should, and the judge was fair in sentencing with what he had available to him.
>
> THE COURT: Do you think that that experience -- especially it's pretty recent -- would that impair your ability to fairly and impartially serve as a juror?
>
> PROSPECTIVE JUROR: I don't believe it would. I'm 25 years of government service. I work for Social Security Administration right now. And so I was thinking about this last night when they told us as a group -- you told us what kind of case it was, and I was thinking about it, and I don't think it would make me

lean one way or another. I believe in my constitution and I believe in laws and I believe that everybody has an opportunity for a fair trial.

VRP at 44-45. The trial court offered counsel a chance to ask follow-up questions. Defense counsel declined to ask any further questions, and the prosecutor asked one clarifying question regarding the name of juror 1's step-father. After juror 1 departed from the courtroom, the court asked counsel if either of them had any concern about juror 1 serving on the jury. Both parties replied that they had no concerns or motions regarding juror 1. Juror 1 was seated on the jury.

After the jury delivered its verdict, juror 11 contacted defense counsel to raise concerns about how juror 1 impacted deliberations. According to an internal email detailing a receptionist's phone call with the juror, juror 11 felt that "she was coerced into the decision that she made." CP at 43. She felt "like her arm was twisted and she [did] not feel that the decision she made was the right one." *Id.* Defense counsel hired a private investigator to look into the matter and interview juror 11. According to the investigator's report of the interview, juror 11 believed that juror 1 acted inappropriately in deliberations by discussing his daughter's experience of being "sexually assaulted" by her grandfather. *Id.* at 44. In discussing the incident during deliberations, juror 1 became emotional and upset.

B. Prosecutor's Statements

During closing arguments, the prosecutor made two comments which Chinnappan argues amounted to prosecutorial misconduct. First, in recounting LG's testimony, the prosecutor said, "That's an academy winning award performance if she's not being truthful. Her testimony is credible." VRP at 549. Next, the prosecutor cast doubt on Heather's testimony that it was her standard practice to leave the door open while using the bathroom. The prosecutor said, "You've got to be kidding me, right? There's no adult in the United States that hasn't had some kid burst

into the bathroom if the door wasn't locked at some point." *Id.* at 552. This statement, Chinnappan contends, constituted improper testimony to facts that did not otherwise appear in the record by claiming that every American adult shared a specific experience. Chinnappan did not object to either of the remarks he now complains of on appeal.

C. Procedural Posture

Five days after the close of trial, Chinnappan moved for a new trial and relief from judgment. Chinnappan argued that juror 1 committed misconduct by discussing, during deliberations, his personal experience with his daughter having been sexually assaulted and becoming emotional about it.[3] Chinnappan contended that juror 1's actions constituted misconduct because juror 1 "misled the court when he stated he can be impartial [when] it is clear from his conduct in the jury room that he was not separating his personal experience from the facts of this case." *Id.* at 40.

During argument on the motion, counsel for Chinnappan characterized the situation as juror 1 having gone "through a similar kind of case," and that counsel had "no evidence to suggest" that juror 1 intentionally misled the court. VRP (Oct. 14, 2022) at 6-7. Chinnappan argued that juror 1's alleged expression of emotion caused juror 11 to feel coerced into voting to find Chinnappan guilty. The court found that the "facts alleged do not arise to juror misconduct and that therefore they inhere in the verdict." *Id.* at 14-15. The court denied the motion for a new trial.

---

[3] "Sexually assaulted" appears to be the word choice of the investigator. Juror 11 did not file a declaration and the term sexually assaulted is not noted as being a quotation in the investigator's report. CP at 44.

ANALYSIS

I. ALLEGED JUROR MISCONDUCT

Chinnappan makes two arguments about the alleged misconduct of juror 1. First, Chinnappan argues that juror 1 used the term sexual assault during deliberations when describing what happened to his daughter in the past, and claims that this was a material misrepresentation because what juror 1 described during voir dire was a non-physical form of sexual victimization. As the State correctly notes, Chinnappan did not make this argument below in his motion for a new trial. Second, Chinnappan argues that juror 1 introduced outside evidence into the case by bringing up his personal experience with sexual victimization at all during deliberations, constituting juror misconduct.[4] We reject both of these arguments.

A. Material Misrepresentation/Failure to Disclose

1. Legal Principles

With narrow exception for manifest error affecting a constitutional right, the argument raised on appeal must have been the same argument made below to preserve the claim. RAP 2.5(a); *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007); *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). This is particularly important where a matter in dispute requires factual development that must be done by the superior court. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). In order to demonstrate manifest error affecting a constitutional right, an appellant must show not only an error of constitutional magnitude, but also that the error caused actual prejudice, meaning that " 'the asserted error had practical and identifiable consequences in

---

[4] Chinnappan repeatedly conflates his claim of failure to disclose information during voir dire with his claim of improper introduction of outside information during jury deliberations as though they are the same claim, with the same analysis on review. They are not.

the trial of the case.' " *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

To be granted a new trial on a claim such as this, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire and then further show that a correct response would have provided a valid basis for a challenge for cause." *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 267, 172 P.3d 335 (2007). We review a trial court's findings regarding juror misconduct for abuse of discretion. *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 203, 75 P.3d 944 (2003).

2. Application

Chinnappan, relying entirely on the premise that juror 1 said, during deliberations, that his daughter had previously been sexually assaulted, argues that juror 1 failed to "fully disclose the nature of the conduct" that occurred between his step-father and his daughter. Am. Br. of Appellant at 19. Chinnappan contends that what juror 1 said during deliberation was "fundamentally different" than what he said during voir dire, which was that there had been no " 'physical abuse' " and that " '[i]t was communication, really, and showing of porn.' " *Id.* at 18 (quoting VRP at 44). Chinnappan asserts that the "failure to fully disclose the nature of the conduct . . . fundamentally altered the proceedings and compromised Mr. Chinnappan's ability to receive a fair trial." *Id.* at 19. The State contends that this argument is raised for the first time on appeal and that Chinnappan has not shown a manifest error affecting a constitutional right. The State also argues that there is no evidence that juror 1 used the term sexual assault to describe what happened to his daughter. We agree with the State in both respects.

First, this claim of error fails at the outset because Chinnappan did not produce any evidence showing that juror 1 said his daughter was sexually assaulted during jury deliberations. This term appears in the report of the investigator and is not identified as being a quotation (either from juror 1 or juror 11, the person the investigator interviewed). For all we can discern, the investigator may have used this term as a euphemism for sexual victimization, which is consistent with what juror 1 described in voir dire. Moreover, Chinnappan did not file a declaration from either juror 11 or juror 1. As the State observes, "the phrase 'sexually assaulted' could mean different things to different jurors. Phrases that are easily understood by attorneys and judges could be misused or misunderstood by jurors." Br. of Resp't at 24. There is no factual basis on which to reverse the jury's verdict.

Second, the argument Chinnappan now raises is different than the one he raised below. Relying on the notion that juror 1 specifically said that his daughter was sexually assaulted, (as opposed to some other form of sexual victimization), Chinnappan now argues that juror 1 made a material misrepresentation about what happened to his daughter, and this misrepresentation contributed to the verdict. ("Where the information interjected into the deliberations was not just that the child had been exposed to pornography . . . but had been 'sexually assaulted' as relayed by Juror 11, the impact on the deliberative process was inevitable." Am. Br. of Appellant at 23.)

Not only does this require us to engage in speculation about what led to the jury's verdict, but Chinnappan did not assert below that juror 1 failed to disclose that this daughter was sexually assaulted. Chinnappan, for the first time in his reply brief, addresses RAP 2.5, and essentially contends that the filing of the motion for a new trial based on juror misconduct was sufficient to

preserve *any* ground on which he might rely on appeal related to alleged misconduct. He cites no authority in support of this proposition.[5]

Chinnappan also argues that this error is reviewable because it affected "his constitutional right to due process of law including a fair trial before a properly constituted jury." Reply Br. of Appellant at 10. Here again, Chinnappan offers *no argument* about why this is so. It is not enough to identify a constitutional right that may have been violated. An appellant must show that the violation was manifest, which requires a showing of actual prejudice. Actual prejudice in this context means that the error " 'had practical and identifiable consequences' " at trial. *O'Hara*, 167 Wn.2d at 99 (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). " 'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.' " *Id.* (quoting *McFarland*, 127 Wn.2d at 333).

Chinnappan's claim that juror 1 failed to disclose material information during voir dire fails for lack of proof. Counsel had the opportunity to explore this matter at length during voir dire. The court offered counsel an opportunity to ask juror 1 further questions, and counsel declined. Counsel did not raise any concern surrounding juror 1. In addition to its lack of factual support, Chinnappan's claim that juror 1 failed to disclose relevant information is not reviewable for the first time on appeal.

B. Introducing Facts Outside of the Evidence During Deliberations

Chinnappan argues that it was misconduct for juror 1 to mention his daughter's past experience with sexual victimization during deliberation. Complicating our review of this issue is

---

[5] Chinnappan vaguely references defense counsel being "constrained by the limited information that was provided." Reply Br. of Appellant at 9. There is nothing in the record addressing why a declaration could not have been sought by either juror 11 or juror 1.

Chinnappan's repeated melding of his argument about juror 1's alleged failure to disclose information during voir dire with his argument that juror 1 introduced outside facts into jury deliberation. In any event, missing from Chinnappan's brief is any argument about what *effect* the information about juror 1's experience had on the jury's deliberations.[6] In his motion below, Chinnappan argued merely that juror 1's conduct during deliberation evinced his lack of impartiality. But he did not argue that juror 1's lack of impartiality, even if demonstrated, *tainted the jury's deliberation*.

To the extent that Chinnappan relied on the report of his investigator to establish that juror 1's conduct influenced the jury's deliberations, the report states only that "[juror 11] doesn't know what should happen, but felt it was an inappropriate thing to bring up during deliberation and thought that the court should know." CP at 44. We reiterate that we do not consider arguments unsupported by reasoned argument and citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6).

Chinnappan's juror misconduct claim fails.

## II. ALLEGED PROSECUTORIAL MISCONDUCT

Chinnappan argues that the prosecutor improperly vouched for LG's credibility when he referred to her testimony as " 'an academy winning [award] performance if she'[s] not being

---

[6] The extent of Chinnappan's argument that juror 1's conduct impacted juror 11 is that juror 11 felt " 'coerced' " and as though her " 'arm was twisted.' " Am. Br. of Appellant at 23 (quoting CP at 39). But the source of this claim comes from the email that defense counsel's receptionist sent to defense counsel, which is not only hearsay in itself, but also relies on hearsay statements allegedly made by juror 11 to the receptionist. As we note, there is no declaration from juror 11, and there is also no declaration from the receptionist. We cannot even discern if the terms coerced and arm twisting were terms used by juror 11 or, rather, were the receptionist's *characterizations* of juror 11's comments. In sum, the allegations contained in this email are not competent evidence.

truthful,' " and then stated that " '[h]er testimony is credible.' " Am. Br. of Appellant at 27 (quoting VRP at 549). He also contends that the prosecutor committed misconduct by arguing facts outside of the record in order to cast doubt on the testimony of the defense witness. In regard to Heather's testimony that she typically leaves the bathroom door open, the prosecutor said, " 'You've got to be kidding me, right? There's no adult in the United States that hasn't had some kids burst into the bathroom if the door wasn't locked at some point.' " *Id.* (quoting VRP 552). According to Chinnappan, these statements amounted to prosecutorial misconduct and violated his right to a fair trial.

The State responds that Chinnappan waived these claims by not objecting below, and that if they were not waived, the prosecutor's arguments were proper and simply encouraged the jury to make reasonable inferences from the evidence presented. We agree with the State.

A. Legal Principles

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (plurality opinion)).

"We employ one of two tests to determine whether reversal is required based on prosecutorial misconduct." *State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P.3d 458 (2021). When an appellant objected to the arguments below, the appellant need only show "(1) that the prosecutor's remarks were improper and (2) that there is a substantial likelihood that the misconduct affected the verdict." *Id.* However, when the appellant did not object to the

prosecutor's arguments or remarks, the appellant "waives the prosecutorial misconduct claim unless the defendant shows (1) that comments were improper, (2) that the prosecutor's comments were both flagrant and ill[-]intentioned, (3) that the effect of the improper comments could not have been obviated by a curative instruction, and (4) a substantial likelihood the misconduct affected the verdict." *Id.* at 201.

"When a nonobjecting defendant fails to show that the improper remarks were incurable, the claim 'necessarily fails, and our analysis need go no further.' " *Id. (*quoting *State v. Emery*, 174 Wn.2d 741, 764, 278 P.3d 653 (2012)). "Moreover, a defendant might succeed in showing incurable prejudice from the improper statements and yet fail to demonstrate a substantial likelihood that the misconduct affected the verdict." *Id*.

Prosecutors have "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *Thorgerson*, 172 Wn.2d at 448. Prosecutors are permitted to characterize the facts presented and argue reasonable inferences from those facts during closing argument. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166-67, 410 P.3d 1142 (2018). Moreover, jurors are "specifically instructed not to consider closing arguments as evidence, which further helps draw the line between fact and argument." *Id.* at 167. However, prosecutors may not express personal beliefs regarding "the veracity of a witness," nor may they suggest that evidence outside of the record supports certain testimony. *Thorgerson*, 172 Wn.2d at 443. "Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact." *Id*.

The supreme court has explained the distinction between a prosecutor expressing personal opinion and the prosecutor asking the jury to draw a reasonable inference from the evidence:

"It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion."

*State v. McKenzie*, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006) (emphasis omitted) (quoting *State v. Papadopoulous*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).

B. Application

As with any claim of prosecutorial misconduct, whether objected to or not, an appellant must first show that the arguments or remarks in question were improper. *State v. Houser*, ____ Wn. App. 2d _____, 544. P.3d 564, 585-86 (2024). If the argument was not improper, there is no need for the appellate court to undertake analyses about either curability (where no objection was lodged) or prejudicial effect.

As it relates to Chinnappan's claim that the prosecutor improperly vouched for LG, Chinnappan challenges the following argument:

Was the way that she acted on the stand consistent with somebody who was making up a story to get attention? I mean, you have to speculate to come up with a reason, but go ahead. Go ahead. *Is that somebody who was talking about some made-up story or was that somebody who really experienced trauma? She's 13 when she testified. That's an academy winning award performance if she's not being truthful. Her testimony is credible.*

VRP at 549 (emphasis added.).

Regarding the first step of a prosecutorial misconduct claim, namely, that these remarks were improper, Chinnappan offers the following, single-sentence argument: "This was not a rhetorical question posed to the jury but was the State prosecutor vouching for the credibility of

14

the complaining witness." Am. Br. of Appellant at 30. Putting aside that we can decline to review a claim of error predicated on a conclusory statement that does not even approach sufficient argument (*see* RAP 10.3(a)(6)), these remarks are plainly not improper.

This argument, although not particularly formal, was clearly an entreaty to the jury that it should find LG credible based on the evidence. Appellate courts should resist the urge to strictly police the word choices of the lawyers trying a case, bearing in mind that lawyers, like everyone else, have different manners of speaking. While this statement is emphatic and somewhat flippant, taken in context, no reasonable person would construe this argument as improper vouching. Prosecutors are permitted to argue to the jury that it should find the State's witnesses are credible. *Thorgerson*, 172 Wn.2d at 448.

Even if the prosecutor's argument was improper, Chinnappan fails to even argue, much less demonstrate, that this argument was flagrant and ill-intentioned and could not have been obviated by a curative instruction. *Gouley*, 19 Wn. App. 2d at 201. We will not review a claim of error that is unsupported by argument or citation to authority. RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809.

Chinnappan's vouching claim fails because the remarks he complains of were not improper and, even if they were improper, the claim is waived.

Likewise, the prosecutor's statements regarding Heather's testimony about leaving the bathroom door open constituted permissible argument based on common sense and were not improper. *State v. Barrow*, 60 Wn. App. 869, 873-74, 809 P.2d 209 (1991). The prosecutor, in arguing that the jury should not find Heather's testimony credible, argued:

> So the bathroom door, again, [Heather] knows about [LG] getting carried in the
> bedroom and if the bathroom door is open while she's in there, and [LG] is the one

who says [Heather is] in there. If the bathroom door is open, that's not going to happen. [Heather] said: Oh, that's my normal practice. That's my normal practice; I leave the bathroom door open when I'm using the facilities.

And what other piece of information do you have that came out of the testimony that may bear on how credible you find that to be? She's got two little boys in the house. *You've got to be kidding me, right? There's no adult in the United States that hasn't had some kid burst into the bathroom if the door wasn't locked at some point. It's her normal practice with two little boys to leave the bathroom door open or is that a construct of her desire to get her husband back?*

VRP at 551-52 (emphasis added).

Earlier in closing argument, the prosecutor highlighted Heather's potential interest in the outcome of the case, stating:

So one of the things that came out was when she was asked, hey, anything else you want to tell me, "I just want my husband to come home." She's got an interest in the proceeding. She's got an interest in the outcome.

. . . [Heather] acknowledged that she knew of the allegations. And so you have unequivocal evidence in front of you that if she was inclined to tailor her testimony to the benefit of her husband, she knew everything that she needed to know to do that.

*Id.* at 549-50.

When we consider the snippet of argument that Chinnappan complains of in the context of the entire argument, as we must, the prosecutor was clearly arguing that Heather's testimony was not credible based on her interest in the case coupled with an alleged behavior that a jury could find, based on their common sense, was highly unlikely. The prosecutor was not introducing "facts" not in evidence. Am. Br. of Appellant at 27.

Not only was this argument not improper, but Chinnappan, again, fails to overcome waiver because he does not demonstrate, or even argue, that this argument was flagrant, ill-intentioned,

and incurable by an instruction. *Gouley*, 19 Wn. App. 2d at 201; *Cowiche Canyon*, 118 Wn.2d at 809; RAP 10.3(a)(6).

## CONCLUSION

Chinnappan fails to show error. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

CRUSER, C.J.

We concur:

_____

LEE, J.

_____

GLASGOW, J.